# EXHIBIT B
# December Agreements

Mr. Carlos D. Gutierrez  
President  
United Resource Recovery Corporation  
5396 Blackstock Road  
Spartanburg, SC 29303

December 10, 2004

Re: Equity Private Placement, United Resource Recovery Corporation, ("URRC").

Dear Carlos,

This is to confirm our conversation wherein RamKo Venture Management ("RamKo") and its affiliate Adirondack Capital Partners Inc. have agreed, on a best efforts basis, to attempt to place an equity funding for URRC. Further, we have agreed that should RamKo be in the position to close such transactions, on substantially the terms outlined, and if, for any reason, the Company chooses to accept alternative funding or a strategic investment, RamKo shall be entitled to, as a break-up fee, compensation equal to its minimum fee ($300,000 plus warrants) less any amount contractually due and payable or paid under the enclosed Summary of Terms.

Additionally, I would like to direct your attention to page 4 of the Summary of Terms. Please note that the paragraph entitled "Conversion" outlines a procedure where the preferred equity could have a claim upon conversion, for a greater percentage of common equity then we have discussed. This type of provision is not meant to increase the position of the investor in the ongoing investment. It is however, meant to protect the investor against committing to the investment, only to have the investment be used as a form of stalking horse for the purpose of promoting a sale of the Company. The impact, if any, can be seen by reviewing a timeline of the relative worth of the Company vs. time since investment. As an example, if after the investment (with money down-streamed to Raleigh) someone offered you $100 million for the total business, even after full dilution the provision would not be operable. Alternatively, if you raise $15 million and subsequently agreed to a buyout of under $50 million (as in a quick flip) the provision would operate to protect the investor. I would be pleased to spend the time with you and Gerry to get you and or your counsel comfortable with the concept.

URRC
December 10, 2004

Page 2

      Should you have any questions and or comments, please don't hesitate to telephone. If the foregoing and the enclosed Summary of Terms accurately outline our agreements in these contemplated transactions, please execute, fax and return by U.S. mail a copy of each document (3). Thank you for your courtesy. We look forward to working with you and your whole organization.

Sincerely

RamKo Venture Management, Inc.

_____

By John W. Kohut, President

Acknowledged and Agreed:

United Resource Recovery Corporation

_____

Carlos D. Gutierrez, President

**RamKo Venture Management, Inc.**
711 Fifth Avenue
New York, New York 10022

Mr. Carlos D. Gutierrez
President                                                                                       December 10, 2004
United Resource Recovery Corporation
5396 Blackstock Road
Spartanburg, SC 29303


Re: Equity Private Placement, United Resource Recovery Corporation ("URRC")
– SIDE LETTER #1


Dear Carlos,

       This is to confirm our conversation wherein RamKo Venture Management, Inc. ("RamKo") and its affiliate Adirondack Capital Partners Inc. ("B/D") have agreed, on a best efforts basis, to attempt to raise expansion funding for URRC. The major points for the Private Placement are summarized on our executed copy of the "Summary of Terms". One of the provisions enclosed therewith, calls for the Company to enter into a financial advisory agreement with RamKo or one of its affiliates. We agree herewith, that in the event the Company, deems it necessary, as a requirement of the contemplated funding, to not retain RamKo's services, then the Company, on the one hand and RamKo, on the other hand, agree that, in such event the Company herewith grants to RamKo or one of its affiliates, the right of first refusal to arrange any additional funding necessary (exclusive of any bank related Senior Debt), for a period not to exceed 5 years, or such shorter time that cash commissions paid for such placements, equal the fees that would have been payable over the term of the contemplated financial advisory agreement. For purposes of this calculation, future fees paid, shall not include any fees paid or payable, as a result of transactions contemplated by the "Summary of Terms" and shall at all times be calculated, on the basis of fees considered normal and customary in the investment banking industry, for similar transactions.

       Additionally, this is to acknowledge our discussions wherein RamKo has reduced its fee as previously agreed with the Company. Beyond that RamKo has further agreed to consider the reduction of it's new stated fees, subject to the source of the potential investor, and based upon then market pricing for similar transactions.

       Further, RamKo and the Company have agreed that to the extent that Warrants have not been issued pursuant to the Private Placement, in consideration of past work on the Company's behalf, the Company shall issue to RamKo or its designee a 10 year warrant to purchase up to 5,000 shares of the Company's common stock exercisable, inclusive of a cashless exercise option, at the same per share (share amount based on the capital structure outlined in the Summary of Terms) as the per share price of the placement. In no event shall the Company issue Warrants to RamKo or its designee's in an amount convertible to in excess of 5,000 shares.

**RamKo Venture Management, Inc.**
711 Fifth Avenue
New York, New York 10022

URRC  
December 10, 2004

Page 2

    I have previously forwarded a copy of RamKo's standard financial advisory agreement, as executed by another of its clients. It remains our intent to use this form as the basis of our Agreement.

    Should you have any questions and or comments, please don't hesitate to telephone. If the foregoing, the Summary of Terms and the draft Agreement accurately outline our agreements in these matters, please execute, fax and return by U.S. mail a copy of this document. Thank you for your courtesy. We look forward to working with you and your whole organization.

Sincerely

Acknowledged and Agreed:

United Resource Recovery Corporation      RamKo Venture Management, Inc.

                                                               By John W. Kohut, President

Carlos D. Gutierrez, President

# Private Placement – URRC

## Summary of Terms

| | |
|---|---|
| **Issuer:** | United Resource Recovery Corporation ("URRC" or the "Company") |
| **Private Placement:** | On a best efforts basis, RamKo Venture Management, Inc. ("RamKo"), through themselves, their agents and/or Affiliates, ("the Investor Group") will arrange a Private Placement of up to 250 units at 100,000 each – for a total of up to $25,000,000 (for a maximum aggregate issuance of 66.666 <u>Convertible Preferred Shares</u>) |
| | All preferred shares shall be convertible 1:1 into common shares and other than having a liquidation preference over the common shares shall in all other manners function equal to the common shares, unless otherwise agreed to by the Company. |
| **Capitalization Structure:** | Assume 1,000,000 Authorized Shares of Capital Stock with an initial issued and outstanding of 100,000 shares or share equivalents. At the initial closing, without regard to the effect of any Warrants, the shares would be held or reserved as follows (assumes a post money valuation of $40,000.000): |

| | | |
|---|---:|---|
| Existing stockholders | 62,500 | shares |
| Initial Private Placement | 37,500 | shares |

**Percent of fully diluted Common:** (post conversion, exercise of all then issued warrants)

| | Pre-Financing | Post-Financing |
|---|---:|---:|
| Investor Group (Initial Private Placement)* | 0% | 62.5% |
| Original Shareholders | 100.0% | 37.5% |
| Total | 100.0% | 100.0% |

\* Prior to conversion or exercise of any Warrants the Company would have raised up to $25 million for up to 62.5% dilution to the current ownership of the parent company.

Page 1

# Private Placement – URRC

## Summary of Terms

| | |
|---|---|
| Series closings : | An initial closing may be held upon the receipt of valid subscription documents totaling $ 10 million. Thereafter, upon the occurrence of certain required events, one or more secondary closings may be held, at the discretion of the Company, in increments of $5 million. The Company will be obligated to close on all subscriptions validly held in anticipation of the initial closing and at it's discretion may, if the issue was not fully subscribed, agree to keep accepting subscriptions for a subsequent closing, or to terminate such offering.  The Company is under no obligation to accept subscriptions in excess of $10 million. |
| Dividend Rate: | The Preferred Stock shall have an annual dividend rate of 8% compounded semi-annually. |
| Fees and Expenses: | $750.000     Commission (assuming a $15 million placement) – the greater of 10% of the actual equity placed – not to exceed $600,000 or 5% of the actual equity placed. |
| | $250,000     estimated closing expense (actual expense will be reimbursed) |
| | To be determined     Blue Sky Fees |
| | Other comp.     500 "A"Warrants, for each $1 million raised. Warrants will be issued for a maximum of 5,000 common shares, each with a cash-less exercise provision and a ten year expiry; each having an exercise price equal to the share price of the placement. |
| Closing Conditions: | The investment is subject to customary conditions, each to the satisfaction of RamKo, including:  1) the satisfactory completion of business, accounting and legal due diligence; 2) a satisfactory review of the Company's audited financial statements for the year ended December 31, 2004, as well as a review of the most recent interim financial statements of the Company,  with results satisfactory to RamKo 3)the negotiation and execution of definitive documentation;  4) no material adverse changes in the business or its  prospects before closing;  5) the Company being operated in the ordinary course of business with no material asset sales, dividends declared or paid or any other shareholder distribution;  6) employment, compensation, confidentiality, proprietary rights, non compete agreements (inclusive of a no-hire agreement) satisfactory to RamKo, being signed by key management;  7) sufficient business and key person , insurance. |

Page 2

# Private Placement – URRC

## Summary of Terms

| | | |
|---|---|---|
| **Warrants :** | Term: | the lesser of 10 years from closing or 5 years from the IPO date. |
| | Exercise Prices: | "A" Warrants – at a price per share equal to the placement. |
| | Features: | -The "A" Warrants shall be non-callable and shall allow for cashless exercise. |

**Liquidation Preference:** In the event of a liquidation, the Preferred holders shall be entitled to receive, in preference to the holders of Common Stock, an amount equal to the original issue price plus accrued but unpaid dividends. A consolidation or merger of the Company, the sale of all or substantially all of the Company's assets, a material change in senior management, or an initial public offering of at least $15 million, shall be treated as a liquidation.

**Redemption:** The Company shall redeem one-third of any outstanding Preferred on the fifth anniversary of the Closing, one-third on the sixth anniversary and one-third on the seventh anniversary of Closing. The redemption amount is the original issue price plus accrued but unpaid dividends, if any.

**Forced Redemption:** At anytime after the fifth anniversary of the Closing, the Company shall have the right to redeem 100% of any then unconverted Preferred Shares at the redemption amount (detailed above).

**Conversion:** Holders of the Preferred Shares may convert their shares immediately preceding a liquidation or redemption event, into a number of common shares which would equal the greater of either one share of Preferred Shares for one share of Common Stock (1:1) or that number of common shares, based on the valuation established for the liquidation or redemption event, that would result in the holder of the Preferred Shares receiving the greater of (i) 200% of the original issue amount, or (ii) a compounded annual return of 30% on the original issue price from the date of purchase, pursuant to the Securities Purchase Agreement, through the date of conversion. In the event a proposed liquidation event would have paid the holders the requisite return in cash, but such proposal was rejected by the Preferred Shareholders, conversion thereafter shall be on the basis of one share of Preferred for one share of Common.

# Private Placement – URRC

## Summary of Terms

| | |
|---|---|
| **Preemptive Rights:** | The Investor Group shall have the right, but not the obligation, to purchase that portion of any subsequent offerings equal to their pro-rata share of the Common ownership of the Company. |
| **Co-Sale Rights:** | In the event of a proposed sale of Common Stock by any Current Shareholder to a non-Current Shareholder, such shares must be offered first to (i) the Preferred Holders and then (ii) the other shareholders, subject to a shareholders agreement and last (iii) the Company shall have the right to purchase any or all of the offered shares and/or the right to participate pro-rata in the sale of any shares to such non-Current Shareholder either, on the same terms as proposed by the selling shareholder. Existing shareholders will execute an agreement to this effect. |
| **Protective Provisions:** | So long as any of the preferred shares have not been converted, the Company shall not, without the affirmative vote of seventy five percent (75%) of the holders of the Preferred Shares, among other provisions: 1) alter, change or amend the terms of the Certificate of Incorporation or By-Laws of the Company; 2) authorize, create or issue any additional debt beyond that contemplated by the approved business plan; 3) increase or decrease the number of Directors; 4) redeem, repurchase, declare a dividend or make any distributions of capital stock; 5) enter into any material transaction with any officer, Directors, employee, or affiliate; 6) enter into any dissimilar business; 7) acquire companies (or their assets) whose purchase price exceeds 15% of the total assets of the Company as of the most recent quarterly balance sheet; 8) to approve a merger, consolidation or sale of substantially all the assets of the Company |
| **Registration Rights:** | Holders of the Common shall be entitled to unlimited piggyback registration rights. All registrations will be at the Company's expense and will be subject to customary cutbacks at the underwriter's discretion. |
| **Board of Directors:** | At such point as the Private Placement is closed, the Board of Directors of URRC will be comprised of 5 persons. There shall be two directors appointed by current ownership. The Investor Group shall be granted two seats on the Board of Directors and one seat on all Committees of the Board. A fifth member shall be appointed reasonably satisfactory to both the current ownership and the Investor Group. |
| | At such time, the Board shall meet at least quarterly with adequate notice provided to all Directors. Certain key strategic decisions, including approval of the budget, issuance's of debt or equity, mergers/acquisitions, and transactions with affiliates shall require the approval of a 66.7% of the Company's Board of Directors. All compensation decisions for key management shall be approved by the Compensation Committee. An Investor Group Director and an outside Board Member shall comprise the majority. |

# Private Placement – URRC

## Summary of Terms

| | |
|---|---|
| **Board Expenses:** | The Company shall reimburse Board members for all reasonable expenses associated with the duties and requirements of their membership on the Board and/or its Committees. |
| **Information Rights:** | The Company shall provide the investors with monthly financials not later than 30 days after the close of the month, audited financials not later than 120 days after the close of the fiscal year, and an annual plan (with budget and narrative) no later than 30 days prior to the close of the previous year. |
| **Key Person Insurance:** | The Company shall maintain key person insurance on certain members of management until otherwise determined by the Board of Directors. |
| **Non-Compete:** | Prior to closing, certain employees of the Company will sign non-compete agreement, the terms of which must be acceptable to the Investor Group. |
| **Estimated Expenses:** | The Company shall pay actual out-of pocket expenses (whether or not such Private placement shall ultimately close) for the preparation, execution and enforcement of the underlying documentation. |
| **Management Fees:** | To the extent the Company accepts Private Placement Funds arranged by RamKo, as compensation for its active participation in the on-going strategic direction and oversight of the Company's activities, the Company shall enter into a financial advisory agreement, (a copy of which has been furnished to the Company) with an affiliate of RamKo for a term of five years, or as long as a representative of RamKo remains on the Company's Board of Directors. The terms of this agreement shall include a monthly advisory fee of $8,500 plus reasonable out of pocket expense. Additionally, RamKo and or its affiliates shall be entitled to customary transaction fees associated with future financing(s) or acquisition(s) arranged by such other RamKo entity. |
| **Incentive Compensation:** | Notwithstanding any other provision contained within this Summary of Terms, it is understood that an Incentive Compensation Program will be developed for the reward of those assisting in the creation of shareholder worth. An amount of fully diluted Common Stock, to be approved by the Board of Directors, equal to between 5% and 10% of the share ownership of the Company, shall be reserved for such program. |

# Private Placement – URRC

## Summary of Terms

| | |
|---|---|
| **Exclusivity Period:** | The Company shall provide RamKo a 180 day period of exclusivity to complete due diligence, to negotiate and execute definitive documentation and to close the transaction. During this exclusive period, neither the Company nor its affiliates and/or advisors shall initiate discussions or engage in due diligence correspondence with respect to an equity investment in the Company with any party other than RamKo. During such period, should the Company introduce "persons" who ultimately invest in such Private Placement – the Company and RamKo agree to reasonably resolve the allocation of such fees if any, based upon the amount of support RamKo personnel have expended on such placement. |
| | To the extent a potential investor is a recipient of the Company's Business Plan or such other documentation, as prepared by RamKo or otherwise has been introduced to the Company by Ramko, or any of its affiliates, and such potential investor makes an investment in the equity of the Company within a two year period, then RamKo shall be due it's fee as outlined hereunder. |
| **Confidentiality:** | The term sheet is confidential and may not be disclosed to anyone other than representatives of the Company and its financial and legal advisors without the express written consent of RamKo. |
| **Approximate Closing:** | June 30, 2005 |

# Private Placement – URRC

## Summary of Terms

This Term sheet, and the proposed terms set forth herein, does not constitute a binding agreement or commitment of RamKo or any of its affiliates. Any agreement or commitment shall only be contained in definitive agreements (containing the usual representations, warranties, conditions and covenants for these types of transactions) to be negotiated, executed and delivered, if at all, after the completion of appropriate due diligence and fulfillment of the other conditions referred to above. In that regard, RamKo has previously disclosed that it currently intends to put together an Investment Group to subscribe to an amount of the proposed Private Placement. Notwithstanding, nothing contained herein should be deemed to constitute a proposal for an "underwritten" financing. While RamKo is highly confident, based on the terms and conditions outlined herein, that it has knowledge of investors who would fully subscribe to such Private Placement, no such guarantee is made nor should be implied.

It is our understanding that the Company intends to make a decision on the Agency of the Private Placements on December 10, 2004. If the foregoing outline for the Private Placement is satisfactory to the Company, please evidence your willingness to proceed by executing one copy of this outline, on or before December 20, 2004 returning it to the attention of the undersigned (fax confirmed through U.S. mail).


| For RamKo Venture Management, Inc. | For United Resource Recovery Corporation |

By:
John W. Kohut
President
Date:    December 10, 2004

By:
Carlos D. Gutierrez
President
Date: