IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| UNITED RESOURCE RECOVERY CORPORATION, | ) ) ) | Case Number: 7:07-502-HFF |
| Plaintiff, | ) ) | |
| vs. | ) ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER** |
| RAMKO VENTURE MANAGEMENT, INC.and JOHN KOHUT, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| RAMKO VENTURE MANAGEMENT, INC., | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) ) ) | |
| CARLOS GUTIERREZ, | ) ) | |
| Third-Party Defendant. | ) | |
| _____ | ) | |

     Defendants, RamKo Venture Management, Inc., ("RamKo"), and John Kohut, ("Kohut"), respectfully submit this Memorandum in support of their Motion to Transfer this case from the District of South Carolina to the Southern District of New York.

**NATURE OF THE CASE**

     The Plaintiff has filed an action seeking a declaratory judgment from this Court declaring that the Defendants are not entitled to fees, expenses or other compensation outside of the fees provided in a limited Consulting Agreement. The Defendant RamKo has filed a

counterclaim against the Plaintiff and a Third-Party Complaint against an individual named Carlos Gutierrez seeking remedies from the Court.

## STATEMENT OF FACTS

RamKo, a small financial consulting and investment banking firm whose principal (and currently its only) employee is John Kohut, has its offices in midtown Manhattan. Mr. Kohut is a resident of Manhattan. Virtually all of the work that is the subject of this dispute was performed in Manhattan, and accordingly venue would be proper in the Southern District of New York pursuant to 28 U.S.C. §1391(a)(2). The specific facts underlying this case are detailed at some length in RamKo's counterclaim and third-party claim against URRC and URRC's CEO (Carlos Gutierrez), but for the Court's ease of reference the central aspects may be summarized as follows:

RamKo began its relationship with URRC in approximately 2001, because URRC was then (and for years thereafter remained) in need of substantial financial expertise both with respect to its day-to-day operations, and also with respect to the realization of its overall strategic vision. URRC's key asset on which its future profitability depended was a proprietary technology capable of extracting re-usable raw material from used plastic bottles; but the transformation of that technology into a profitable enterprise required the construction of one or more factories and hence very substantial capital expenditures. URRC, from 2001 forward, was looking for ways to maximize the cash flow from its existing but diminishing silver recycling business while it simultaneously developed the plastic recycling business on which its future depended. RamKo, accordingly, was engaged by URRC (a) to supply both day-to-day assistance with the wide range of financial matters that would typically be the responsibilities of a CFO (such assistance to be supplied overwhelmingly via telephone and email from RamKo's New York offices, not via travel to South Carolina), as well as (b) to provide extensive investment banking services of different sorts at different times, nearly all of which was likewise provided by RamKo in or from New York.

Among the many different investment banking assignments undertaken by RamKo was that of acting as URRC's banker with respect to a major private placement being contemplated by URRC in order to fund the capital needs of its business plan; the financing needed would potentially require the raising of up to $16 million in fresh capital. This is the assignment that became the Founders deal on which URRC reneged. The Founders

negotiations were extensive and were conducted almost exclusively in New York. (*See* accompanying affidavit of John Kohut ("Kohut Aff.") at ¶ 3.

The dispute over the fee due to RamKo in connection with the Founders deal is the principal, though not the only, element of RamKo's damages. The outline of RamKo's entitlement with respect to the Founders deal is as follows: RamKo negotiated a deal with Founders, with URRC's approval, whereby $15 million would be raised, a deal that was embodied in an LOI signed by URRC and Founders, and a deal on which Founders was ready, willing and able to close. At the eleventh hour, URRC reneged on the transaction even though it was fully consistent with (and even more advantageous than) the LOI. Importantly for purposes of the RamKo-URRC dispute, URRC had agreed to pay RamKo a break-up fee if (a) the Founders deal was closeable; and (b) URRC backed out of the Founders deal in order to accept alternative funding or a different strategic investment. RamKo accordingly is entitled to that break-up fee now (or will be upon URRC's consummation of an alternative transaction, if it hasn't done so already). The Founders fee was comprised of cash and warrants and has a value, inclusive of the warrants in a comparable transaction, approaching a million dollars. Obviously, the testimony of Founders personnel establishing that they were ready, willing and able to close on terms equal to or better than those set forth in the LOI will be critical to establishing URRC's liability in this disputed aspect of the case.

A second part of the case arises from the fact that, as URRC expressly acknowledged in early 2004, RamKo had provided URRC with other valuable services (the day-to-day CFO and general financial services previously mentioned that were performed almost entirely from New York), for which RamKo had not been paid. URRC accordingly entered into an agreement at that time to pay RamKo for its "past work" (referring to work *other* than the capital raising efforts which were the subject of a separate agreement); such payment for past work to be made in the form of valuable warrants to purchase URRC equity. URRC now denies that it owes RamKo anything in respect of that work, suggesting, evidently, that URRC is somehow entitled to have received all that work for free, or that URRC paid RamKo for it pursuant to a mid-2005 "Consulting Agreement" (discussed immediately below) -- despite the fact that the 2005 Consulting Agreement is entirely prospective and involves services to be rendered and compensation to be paid from June 1, 2005 forward.

3

Third, RamKo continued to perform additional services for URRC *after* the time of the "past work" agreement, for which compensation is also due. Although, as noted above, the parties entered into a Consulting Agreement in mid-2005 whereby URRC finally undertook to start paying RamKo on a current basis for the CFO-type services to be rendered from mid-2005 forward, that agreement specifically *excluded* RamKo's compensation for investment banking services. RamKo in fact performed additional investment banking services in 2005 (besides the Founders deal), chiefly in connection with a consummated corporate acquisition of a company called DMS by URRC, for which no compensation has been paid despite URRC's promises to pay RamKo fairly.

In sum, the issues in dispute involve specific services performed by RamKo and involve contractual entitlements and/or issues of quasi-contract or fraud on the part of URRC and its CEO to the extent they obtained services from RamKo without intending to pay for them. The largest element of damages involves the fees that flow from URRC's decision to walk out on the Founders deal, as to which RamKo must show that Founders was prepared to close the transaction on terms equal to or better than the LOI terms. RamKo will be severely handicapped in this crucial respect if it is required to try this case outside of New York, without live witnesses from Founders.

## ARGUMENT

It is a simple matter to summarize why a transfer of this action would serve the interests of justice. The declaratory judgment action filed in this Court by the nominal "plaintiff" United Resource Recovery Corporation ("URRC") is a blatantly pre-emptive lawsuit launched without warning in the midst of what had been amicable discussions regarding the payment of compensation due to RamKo for a variety of valuable services. URRC, the undamaged party, evidently decided not to pay RamKo what RamKo was entitled to, and filed this action without warning in a transparent effort to deprive RamKo, the New York financial advisory and investment banking firm that is the real plaintiff in this case, of what URRC surely perceived would have been RamKo's obvious choice of New York as the most appropriate forum.

The choice of forum matters a great deal in this case as there is much more at stake than the question of who, as between RamKo and URRC, will have to bear the cost of

4

traveling between New York and South Carolina. The ability to have a full and fair trial hangs in the balance because the availability of critical non-party witnesses for live testimony is dependent on the trial being held in New York.

The central issue in the declaratory judgment action brought by URRC (and in the breach of contract action, now a counterclaim, that would have been brought by RamKo in New York but for URRC's pre-emptive strike) concerns RamKo's entitlement to a break-up fee in connection with a corporate transaction between URRC and crucial non-party Founders Equity SBIC, LLP ("Founders") that was arranged by RamKo and as to which URRC had signed a letter of intent ("LOI"). Founders' New York personnel are *the* essential non-party witnesses in this case, whose presence at trial is vital to RamKo's case, because Founders and only Founders can establish conclusively that it was ready, willing and able to close the transaction reflected in the signed LOI.

It would be difficult, and perhaps impossible under the best of circumstances, to get non-parties like Founders' executives to take travel time away from the press of profitable business in order to come from New York to South Carolina as uncompensated witnesses in someone else's fight; but to make matters even worse, Founders evidently has been prohibited by URRC from cooperating in any respect with RamKo and hence *cannot* come voluntarily to South Carolina for trial, even if, *arguendo,* they could be persuaded to do so. The way this prohibition arose is that URRC was sued by Founders itself in the Southern District of New York just a few months ago, for bad faith and fraud in connection with URRC's having reneged on the LOI. URRC quickly settled and apparently entered into a sweeping confidentiality agreement with Founders, one that evidently has been interpreted by Founders to mean that Founders personnel may not even talk about the facts relating to the Founders-URRC transaction, including those bearing on RamKo's fee dispute. ( *See* Kohut Aff. at ¶ 4.) Thus, it is clear that Founders won't even discuss this case, much less voluntarily come to testify in it, without court process, thanks to the confidentiality agreement that the URRC settlement imposed. Since Founders' offices are on Fifth Avenue in Manhattan, the only way that any Founders witnesses can be expected to appear live for trial will be if this case is transferred to the forum where it should have and would have been brought in the first place, had it not been for URRC's gamesmanship in bringing a declaratory judgment action. And even if URRC were to try to moot this enormous problem by offering to amend its

confidentiality agreement with Founders to provide that Founders executives could come voluntarily to South Carolina, the likelihood that the Founders witnesses would actually do so, or that all of them who would or might be needed would come, is unknowable but surely small.

It is galling, to say the least, that URRC extracted five years of work from RamKo amid countless assurances, written and oral, that fair compensation would be paid, promises on which URRC now proposes to renege just as it reneged on the Founders deal.  RamKo respectfully implores this Honorable Court not to allow URRC to succeed in its blatantly tactical effort to prejudice RamKo's ability to put on its case, by denying Ramko the ability to subpoena crucial live witnesses from Founders.  Because URRC is not the natural plaintiff with a grievance, but is, rather, the plaintiff in name only which has tactically wrested from RamKo its rightful place in the caption; and because of the crucial role of New York witnesses, namely the Founders non-parties, in this action, the interests of justice require that this case be transferred to New York.

Although the list of possible factors that may be taken into account by courts considering transfer motions is a long one, the most important factors on which the cases tend to place maximum emphasis are the location of witnesses, especially non-parties; along with allowing the plaintiff (but only if he is the real plaintiff) to have his choice of forum.  In this case, there are unusual circumstances in both respects that strongly favor the transfer of this action to New York.

The role of the Founders non-party witnesses in a trial of this lawsuit will be outcome-determinative with respect to RamKo's entitlement to a break-up fee.  As already noted, Ramko must show, a predicate to its entitlement, that Founders was, in fact, ready, willing, and able to close on a deal consistent with the LOI that Founders and URRC had signed.  Because this is the pivotal, and biggest-money issue in the dispute, deposition testimony from Founders would be a weak and entirely unsatisfactory substitute for live testimony.  It can be expected that Founders witnesses will not travel, voluntarily, to South Carolina for trial, not just because flying there would involve a much greater time commitment than taking the subway to the courthouse in New York, but also because URRC has put some kind of provision into its settlement with Founders such that Founders has informed RamKo that Founders is prohibited even from talking with RamKo about the relevant subject matter.  It

seems fair to conclude, on the basis of what Founder's leadership informed RamKo's John Kohut, that any form of voluntary cooperation with this lawsuit by Founders is prohibited by the terms of the URRC-Founders settlement agreement, and that the Founders witnesses will therefore be prevented from coming to South Carolina voluntarily, even if (and it would be a very large if in any case) they could be persuaded to take time off from their busy schedules to do so.

Founders' testimony is both crucial and is all but certain to be overwhelmingly favorable to RamKo. This can be asserted with confidence because, as already noted, *Founders itself sued URRC, for bad faith and fraud* in connection with URRC's refusal go through with the deal. *See* Kohut Aff., Exhibit B. It is further worth noting that Founders filed that lawsuit *in the Southern District of New York* a few months ago, which probably caused URRC to think in terms of pre-empting RamKo's inevitable lawsuit in that venue, and crippling RamKo's ability to have live witnesses from Founders, once URRC realized that time was running out on its ability to keep stringing RamKo along with empty promises of payment. URRC should not be permitted to have the enormous tactical advantage of relegating RamKo to depositions of the Founders' witnesses, and then, after hearing what they have to say, offering some testimony from one or more URRC witnesses live at trial outside of New York that Founders witnesses will not be available to rebut even if they could and would have done so. That would be a brutal disadvantage for RamKo to have to endure, and one that URRC has sought to obtain by unfair, tactical means.

With regard to the tactics used by URRC, the court should be aware that URRC lulled RamKo into believing that URRC was attempting to resolve the issue of RamKo's compensation amicably, without litigation, and even claimed to be very close to doing so -- when it launched this pre-emptive litigation. *See* Kohut Aff., ¶ 10. This is not a case where both sides assert breach of contract, both have equal right to be called the plaintiff, and one just filed first. This is a case where the only damaged party, and the only real plaintiff, is RamKo; and URRC is attempting to deny RamKo its choice of forum by filing a case not just pre-emptively, which would be bad enough, but by having told RamKo not to do anything like file a lawsuit the way Founders did, because URRC would work things out with RamKo on amicable terms. URRC should not be rewarded for its gamesmanship.

### The "Plaintiff's" Choice of Forum Receives Little or No Weight in a Declaratory Judgment Action Where the Nominal Plaintiff Isn't the Real Plaintiff

The Seventh Circuit, in *Hyatt International Corp. v. Coco,* 302 F.3d 707 (7th Cir. 2001), provided the following pertinent analysis:

> When a plaintiff chooses her own forum, it is normally reasonable to assume that the choice is convenient. *Piper*, 454 U.S. at 256, 102 S.Ct. 252. The plaintiff is, after all, master of the complaint, *Neuma, Inc. v. AMP, Inc.,* 259 F.3d 864, 880 (7th Cir.2001), and this includes the choice of where to bring suit. In normal instances, therefore, a certain deference is due to the plaintiff's choice of forum with respect to convenience. *See, e.g., ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 553 (7th Cir.2001). In the case of a declaratory judgment action, however, that principle has less force: but for Hyatt's preemptive filing in Illinois, this would be in all respects Coco's suit, and he would have been entitled to file whenever he wanted, wherever he wanted. He is the "natural plaintiff" -- the one who wishes to present a grievance for resolution by a court. *Tempco Elec. Heater Corp. v. Omega Eng., Inc.,* 819 F.2d 746, 749-50 (7th Cir.1987). We have expressed wariness at the prospect of "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural plaintiff.' " *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 431 (7th Cir.1993)

The above analysis applies in all respects to this case; all that's required is to substitute URRC for Hyatt and RamKo for Coco. Indeed, in this case there can be no real question that the only reason why URRC filed a lawsuit, at the same time that it ostensibly was having amicable discussions with RamKo regarding payment of its fees, was to deprive the natural plaintiff of its choice of forum, which very obviously would have been New York.[1]  *See also Piedmont Hawthorne Aviation, Inc. v. Tritech Environmental Health and Safety, Inc.,* 402 F.Supp.2d 609 (M.D.N.C. 2005) (citing *Hyatt* and quoting above analysis).

Accordingly, while URRC can be expected to argue that as the nominal "plaintiff," it should be entitled to its choice of forum, this argument boomerangs if equity and the interests of justice override gamesmanship. URRC isn't the plaintiff in any meaningful respect; RamKo is.

---

[1] The Southern District of New York indisputably is a forum where the action "might have been brought" as required by 28 U.S.C. §1404(a). Venue is permissible in the S.D.N.Y. pursuant to 28 U.S.C. §1391(a)(2) since "a substantial part of the events or omissions giving rise to the claim occurred" in that District, where RamKo performed virtually all of the services giving rise to this dispute, and where most of the meetings and negotiations with Founders occurred.

**The Key Factor of Non-Party Witness Availability
Overwhelmingly Favors Transfer**

The witnesses in this case will fall into three groups: RamKo (meaning John Kohut); URRC (Carlos Gutierrez and URRC's chief operating officer); and Founders (comprised of Warren Haber, the senior partner of the firm, J.D. White, managing partner, and Roger Vincent, Jr., principal). With respect to the Founders witnesses, each of these individuals was deeply involved in various aspects of the negotiations of the Founders-URRC deal and each has a unique perspective on the deal. Haber was the overall visionary for the transaction, White the person responsible for reducing the deal to legal form, and Vincent the point man for due diligence; each interfaced directly with Gutierrez and the COO and each has knowledge bearing directly on the readiness, willingness, and ability of Founders to close a deal on terms equal to or better for URRC than the terms set forth in the LOI. The Founders witnesses thus are absolutely essential to RamKo's case.

As explained by the District Court in *Gundle Lining Construction Corp. v. Fireman's Fund Insurance Co.,* 844 F.Supp 1163, 1166 (S.D. Tex. 1994) (emphasis added), the convenience of non-party witnesses is *the* crucial consideration in a transfer motion:

> To support their respective positions, American and Gundle each list a number of witnesses whose testimony they contend will be required at trial. Gundle's list consists almost entirely of its own employees, whose testimony could be obtained by Gundle both in New Jersey and Texas and, in many instances, would merely be cumulative and directed to collateral issues. A vast majority of the non-party witnesses, who have the most information concerning the performance of the contract, reside in New Jersey. Compulsory process over these witnesses would be available in New Jersey, but not in Texas. Even if some of the witnesses were willing to testify, the cost of transportation to obtain their presence at trial in Texas would be substantial. **The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a).** *See Electronic Transaction Network v. Katz,* 734 F.Supp. 492, 501 (N.D.Ga.1989); *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259 (S.D.N.Y.1974).* **It is the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important factor and is accorded greater weight.** *See Aquatic Amusement Assoc. v. Walt Disney World,* 734 F.Supp. 54, 57 (S.D.N.Y.1990); *see also DEV Indus., Inc. v. NPC, Inc.,* 763 F.Supp. 313, 315 (N.D.Ill.1991); *Designs by Glory v. Manhattan Creative Jewelers,* 657 F.Supp. 1257, 1259 (S.D.N.Y.1987). In this situation, the convenience of the non-party witnesses, who appear to have greater

knowledge of information material to this case, is better served by a trial in New Jersey.

As analyzed by the courts in *Gundle* and the cases cited therein, although there is a laundry list of factors that in a given case may have some bearing on transfer, most of these factors involve mere convenience; whereas the ability to bring material witnesses into court, live to face the jury, is the one that rises far above issues of convenience and expense because it implicates the ability to reach a fair and just result which is the only true purpose of any trial. Parties may grumble about the expense of having to attend a trial away from their home (and that certainly is a factor for RamKo here), but as the *Gundle* case points out, parties and their employees who have material testimony to give, will be motivated by their own self-interest to go wherever the trial is held, in order to present it. The same, however, is not true for non-parties. Indeed, non-parties acting in their own self-interest will typically not expend their time and money and disrupt their own schedules in order to give testimony voluntarily in someone else's case (even when they don't have confidentiality agreements that restrict their ability to do so).

In the instant case, the Founders witnesses are essential. Only they can testify as to whether or not they were ready, willing and able to close on a deal that would serve as the predicate for RamKo's break-up fee. Only they can rebut whatever URRC's witnesses may say at trial about Founders and its willingness to close a deal consistent with the letter of intent. In a word, they are an absolute must from RamKo's standpoint. It is obvious, since Founders sued URRC for bad faith and fraud, that URRC would secure a material and entirely unjustified advantage by bringing this lawsuit, for tactical purposes via declaratory judgment, in a jurisdiction where Founders witnesses could not be compelled by legal process to appear. And since URRC has moreover tied Founders' hands, via URRC's confidentiality agreement with Founders, with respect to any voluntary cooperation by Founders with RamKo, there are more than even the usual reasons why Founders would not, in all likelihood, voluntarily send its people to South Carolina to testify in this matter. Here, thanks to URRC's actions in crafting its settlement agreement with Founders, Founders evidently *could not* do so even in the unlikely event that it was willing to give up time and spend money to come to South Carolina.

In short, this Court should not sanction what is effectively a pure tactical play by URRC designed to handicap the case in its favor. URRC brought a declaratory judgment action for the blatantly obvious purpose of appropriating the choice of forum from the real plaintiff, and then placed venue where Founders' witnesses can't be compelled to come by subpoena, and where they can't or won't voluntarily come. The only place to have a fair fight in this case is where all the material witnesses can and will be, which is in New York.

**None of the Remaining Discretionary Factors**
**Materially Favors South Carolina**

As already noted, the leading factors in considering transfer motions are the convenience of non-party witnesses (which overwhelming favors New York) and plaintiff's choice of forum (but not where the nominal "plaintiff" is not the real plaintiff). Hence, in terms of the factors that truly matter, transfer of this case is warranted. Even with respect to the remaining factors that courts often cite as criteria that may be taken into account, none of the important ones favors South Carolina. Indeed, the importance of any of the other factors that generally are put on the overall list is highly case-dependent. *See Datasouth Computer Corp. v. Three Dimensional Technologies,* 719 F.Supp. 446, 450-51 (W.D.N.C. 1989) (footnote omitted) in which the District Court for the Western District of North Carolina enumerated the broadly-cited factors as follows:

> Courts consider and weigh the following judge-made factors when ruling on Section 1404(a) motions to transfer: (1) plaintiff's initial choice of the forum; (2) the relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (4) possibility of view of premises, if view would be appropriate to the action; (5) enforceability of a judgment if one is obtained; (6) relative advantages and obstacles to a fair trial; (7) all other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interests in having localized controversies settled at home; (10) the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflict of laws. *E.g., DMP Corp. v. Fruehauf Corp.,* 617 F.Supp.76, 77 (W.D.N.C. 1985); *see also* 1A Pt. 2 *Moore's Federal Practice, supra* note 2, at Para. 0.345[5] (citing numerous cases, including *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed 1055 (1947), where factors originated). "The combination and weight of factors requisite to a given result cannot be catalogued. At stake is the art of judging." *Id.* at 4363..

None of the factors cited above is sufficient to overcome the fact that a full and fair trial, with Founders witnesses present, can only be had in New York.  Upon surveying all the various criteria set forth in *Datasouth,* which the Court, quoting *Moore's,* wisely pointed out cannot be catalogued and are much more a matter of judgment than of rote application, it becomes evident that most of these criteria, other than those concerning "availability of compulsory process for attendance of unwilling … witnesses" which strongly favors transfer to New York, have little or no persuasive application to this case.  Let's look at each one:

Criterion one is plaintiff's choice of forum.  As already discussed, the "plaintiff's" choice of forum in this case should be entitled to no weight, and indeed should be viewed as exactly what it is: an attempt to wrest the forum choice from the rightful plaintiff.  The second and third criteria (which overlap), involving ease of access to sources of proof and availability of process to obtain unwilling witnesses, along with the cost of obtaining willing witnesses, strongly favor New York due to the Founders witnesses.  Sources of documentary proof are largely electronic in today's world and hence pose no issue.

Criterion four, regarding view of premises, is irrelevant.

Criterion number five, judgment enforceability, raises an interesting issue.  In its declaratory judgment complaint, URRC seeks to bind not only RamKo and John Kohut, but also states, in Paragraph 17 of the Complaint (emphasis added), that:

> The Plaintiff is informed and believes it is entitled to a declaratory judgment of this court that the Defendants **(and any affiliated parties that might claim under or through them)** are entitled to no fees, expenses or compensation other than consulting fees of $8,500 per month until termination consistent with the Consulting Agreement between the parties.
>
> WHEREFORE, the Plaintiff respectfully requests that the court inquire into all of the facts and circumstances and issue its declaratory judgment that Defendants **(and any affiliated parties that might claim under or through them)** are entitled to no fees, expenses or compensation other than consulting fees of $8,500 per month until termination consistent with the Consulting Agreement between the parties.

Who exactly are the "affiliated parties that might claim under or through" the defendants?  This plainly is a reference to one of the January 2, 2004 Agreements between the parties that are discussed in defendants' Answer, Counterclaims and Third-Party Claims at ¶ 28 and attached as Exhibit A thereto, more specifically to the "Break-Up Fee Agreement"

that, for the Court's ease of reference, is separately attached as Exhibit C to the Kohut Affidavit submitted herewith. The Break-Up Fee Agreement is the document that, as later orally modified, entitles defendants to a break-up fee as a result of URRC's having reneged on the Founders deal; it recites in its very first line that it is memorializing an agreement between URRC, on the one hand, and RamKo and an entity called "Adirondack Capital Partners Inc.," an "affiliate" of RamKo, on the other. Plainly Adirondack Capital Partners Inc. ("Adirondack") is the entity to which URRC is referring in the paragraphs of the Complaint quoted above, and as to which it requests that the Court issue a binding judgment. If that is so, then issues of judgment enforceability clearly favor New York.

Adirondack is a broker-dealer that is an entirely separate company from RamKo. The reference to Adirondack as an "affiliate" meant merely that Adirondack was aligned in purpose with RamKo, not that it was under common ownership. In fact there is no common ownership between the two companies. (*See* Kohut Affidavit, ¶ 8.) Since URRC, by reference to its own pleading in this case, is seeking an order that would bind Adirondack, it is significant in the context of transfer to consider that Adirondack, a company based in New York, would not be subject to the jurisdiction of this Court as it has had no relevant contacts, insofar as defendants are aware, with the State of South Carolina. (*Id.*) And in apparent recognition of that fact, URRC has not sought to join Adirondack in this action.

It is fundamental that in order to bind Adirondack to any judgment rendered in this case, Adirondack would have to be a party. Since URRC itself has expressed, in its pleading, that it wishes to have a judgment rendered that would bind not only RamKo and Kohut, but Adirondack as well, it is evident that the "enforceability of a judgment" criterion favors transfer to New York.

Of the remaining criteria, those enumerated as "(6) relative advantages and obstacles to a fair trial; [and] (7) all other practical problems that make a trial easy, expeditious, and inexpensive" are, in this case, dominated by the issue of the Founders non-party witnesses discussed above. The unavailability of compulsory process for these witnesses in South Carolina is *the* overwhelming relative advantage of New York, and the factor that will make trial easy, expeditious, and inexpensive there. As for court congestion (item 8), the federal district courts in the Southern District proceed very expeditiously, and appeals in the Second Circuit are among the most expeditious in the nation. While the District of South Carolina is

exceptionally efficient, the time to final judgment in New York, inclusive of appeals, would not be materially far behind.

Finally, with regard to criteria 9 through 11, which come into play if there is a significantly "local" character to a controversy, none of those factors favors South Carolina and are generally neutral in the context of this case.  This is not a localized controversy in the sense of an accident, and it is certainly not a dispute that has its focus in South Carolina.  The work at issue performed by RamKo was performed overwhelmingly in New York where RamKo is domiciled; the negotiations of the Founders deal at the heart of this dispute nearly all occurred in New York; and as has already been discussed at length, the Founders people are all in New York.  *See* Kohut Aff., ¶ 6.  The fact that URRC is located in South Carolina does not outweigh the New York elements of this controversy in any material respect.  As for the application of local law or issues of conflict of laws, the law that will be applicable in this case are the bedrock principles of the common law: contract, quasi-contract, and fraud.  Accordingly there is no reason to anticipate any material variation in New York versus South Carolina law.  No state statutes are involved and there is no reason to think that the peculiarities of local law, as to which a given court would be particularly expert, will play any meaningful role in the outcome of the case; hence there is no reason to accord such factors any meaningful weight in the determination of venue.

In sum, even if one surveys the entire list of factors that may be considered in connection with transfer, the two compelling reasons why this case ought to be moved to New York are that (1) New York is the only venue where live testimony of the Founders witnesses can be assured or is even probable; and (2) URRC's choice of South Carolina is entitled to no weight, because the interests of justice demand that URRC, the party that defaulted on its obligations to RamKo, not be rewarded for pre-empting the selection of New York by RamKo, the actual plaintiff.

## CONCLUSION

When *Moore's Federal Practice* speaks of the "art of judging" in connection with a transfer motion, (*see infra*), what would seem to be meant is that the weight accorded to a given factor ought to bear a close relationship to its materiality in the context of the underlying case.  In this case, the factors that matter, the ones that do more than shift

inconvenience and actually affect the court's ability to conduct a full and fair trial, dictate that New York should be the forum.

For the foregoing reasons, defendants respectfully submit that their motion for §1404(a) transfer should be granted in all respects.

Respectfully submitted,

By: s/Julianne Farnsworth

Julianne Farnsworth
Federal Bar # 4438
FARNSWORTH LAW FIRM LLC
Post Office Box 338,
Charleston, South Carolina 29402
Phone:(843) 723-0425
Fax:(843) 723-0426
Email: Julianne@Farnsworthlaw.com

ATTORNEY FOR THE DEFENDANTS

April 4, 2007
Charleston, South Carolina