IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| United Resource Recovery Corporation, | ) |
| Plaintiff, | ) |
| | ) C.A. No. 7:07-CV-502-HFF |
| -vs- | ) |
| RamKo Venture Management, Inc., and John Kohut, | ) |
| Defendants. | ) |
| | ) **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** |
| RamKo Venture Management, Inc., | ) |
| Third-Party Plaintiff, | ) |
| -vs- | ) |
| Carlos Gutierrez, | ) |
| Third-Party Defendant. | ) |

Plaintiff, United Resource Recovery ("URRC"), respectfully submits this memorandum in opposition to Defendants' Motion to Transfer Venue to the Southern District of New York. The Defendants' arguments are not supported by the record and do not warrant a transfer of venue to New York. In fact, this is overwhelmingly a South Carolina case that is properly pending in South Carolina and should be decided here.

**BACKGROUND AND FACTS**

URRC is a South Carolina corporation with its principal place of business in Spartanburg. Carlos Gutierrez, the principal shareholder in URRC (and now a third-party defendant), is a

Spartanburg resident. All but two of URRC's fifteen shareholders live in South Carolina. All but one of URRC's directors live in South Carolina. All of URRC's principal officers live and work in South Carolina. URRC's headquarters and plant are located in South Carolina. All of URRC's corporate records, including accounting records relevant to this case, are located in South Carolina. The vast majority of the non-party witnesses who are able to testify about the services Kohut provided to URRC are either located in or convenient to South Carolina. South Carolina is unquestionably the most appropriate venue for this action.

Although Kohut and RamKo are residents of New York, they can hardly claim it is unfair to ask them to litigate this case in South Carolina. URRC signed the investment agreements and consulting agreement with Kohut in Spartanburg. Kohut made numerous trips to Spartanburg to perform a due diligence review of URRC's financial structure, participate in shareholder meetings, and meet with bankers, attorneys and potential investors. Kohut performed a large part of his work in Spartanburg and outside of New York. But most important, Kohut undertook to act as a consultant to, and as an agent for, a South Carolina corporation. Any investors he was able to locate would have made their investment here, purchasing stock in that South Carolina corporation. Kohut surely should have anticipated that a lawsuit arising out of contracts signed in South Carolina, covering work done for a South Carolina corporation, could and most likely would be brought in the South Carolina.

This litigation seeks to determine the rights and obligations of a consultant and the company he represents. There is nothing unfair about deciding such a dispute in the forum where the represented company is located.

**The Contingency Agreements**

Beginning in 2001 and continuing into early 2004, URRC and Defendants entered a series of agreements pursuant to which Kohut agreed to work on what amounted to a contingent fee basis to put together a deal through which private equity investors would purchase a minority stake in URRC. The purpose of the deal was to provide URRC the funding to increase its plant capacity and develop its polyethylene terephthalate ("PET") recycling business. Kohut tried and failed for several years to attract sufficient investment to close on the terms required by URRC.

RamKo and URRC entered at least three successive investment agreements between August of 2001 and early 2004. Each of these agreements provided that RamKo would attempt to raise equity funding for URRC, that the investors would obtain a minority ownership interest in URRC, that the investment would be subject to satisfactory due diligence by RamKo and that RamKo would have a 90 day exclusivity period to consummate the transactions. Kohut drafted each investment agreement.

In the agreements dated March of 2002 and January of 2004, Kohut inserted a breakup fee provision, which would have required URRC to pay RamKo $300,000 if URRC refused to close a deal with investors who were ready, willing and able to perform on the terms agreed to by URRC. However, Kohut was never able to present an investor offering a deal, certainly not one that triggered his right to a fee pursuant to the terms of the agreements. Likewise, URRC never refused to close with a group of investors, particularly a group that was ready, willing or able to perform, and, therefore, Kohut and RamKo never became entitled to a breakup fee.

**The Relationship Changes**

In the spring of 2005, after several abortive attempts to raise money for URRC on a contingent fee basis, Kohut was suffering from cash flow problems. He requested that URRC

begin to pay him on a monthly basis under a consulting agreement rather than continuing under the prior contingent fee arrangements. Again, Kohut drafted the agreement. URRC signed it and started paying Kohut $8,500 per month for Kohut to act as a consultant or advisor, although Kohut could not be required to work more than an average of 6.25 days per month. URRC continues to pay Kohut $8,500 per month and during the last two years has paid Kohut more than $200,000 under this arrangement.[1] It rings hollow for Kohut to claim he was somehow mistreated when he was paid this well for part-time work <u>and</u> had the earlier opportunity to make a substantial fee if he had been successful in obtaining an investor.

After entering the consulting agreement with Kohut, URRC renewed discussions with Founders, a private equity group with whom Kohut had previously tried to generate interest during the contingency period. In July 2005, the parties came close enough to an understanding that they signed a Letter of Intent which would have provided Founders with majority ownership and control of URRC. Although Kohut assisted in putting this deal together, he was working under his new consulting agreement with URRC and therefore, unlike the other investment agreements, neither Kohut nor RamKo was a party to the Founders Letter of Intent. Therefore, the Letter of Intent provided Founders, not Kohut or Ramko, with a due diligence contingency and 90 day exclusivity period. At this point, the consulting agreement had superceded all previous agreements between Kohut and URRC, and the contingent fee and breakup fee terms of those earlier agreements no longer applied. Gutierrez did offer to support Kohut in his efforts to reap a contingency fee from any such Founders deal, but made clear that the investor, not URRC,

---

[1] URRC is not aware of how much Kohut has been paid by other clients during this time period. Under the circumstances, URRC has now given notice of termination and Kohut's consulting agreement will end shortly.

4

would have to pay any such fee. Unfortunately, the Founders deal never came together and fell apart completely in the Fall of 2006, more than a year after the letter of intent had been signed.

In late 2006, Founders sued URRC in the Southern District of New York, and it is this suit to which Kohut repeatedly refers in his Memorandum. Kohut insinuates that URRC was sued because it acted improperly and argues at length that the confidentiality provision contained in the Founders settlement agreement prohibits the three employees of Founders from testifying or otherwise assisting him in this case. It is correct that the Founders lawsuit was settled promptly, and it is correct that there is a confidentiality provision. However, URRC has unreservedly waived the confidentiality provision, because the terms of the settlement simply do not support the arguments and insinuations made by Kohut. The fact of the matter is that URRC made a business decision to settle the Founders suit, a decision unrelated to the suit's merits (or lack of merits). Rather, URRC was motivated to settle because of the costs involved in litigating in the Southern District of New York and because the settlement enabled it to obtain important due diligence material that would not otherwise have been available to it. URRC realized that it would be prohibitively expensive for a company of its size to pay the attorneys' fees, litigation costs, travel, lodging, and transportation expenses, as well as invest the time its principals would be forced to spend away from running URRC's core business. Thus, URRC was motivated to settle with Founders but not because of fear of the merits of Founders' legal position. Rather, URRC calculated the cost to litigate the case in New York and decided to reach a quick resolution that would allow it to return to its search for new investors and more importantly would allow it to obtain important and costly due diligence analysis which had been performed by Founders and which would be valuable to a potential investor.

**ARGUMENT**

Plaintiff's choice of venue carries great weight in a motion to transfer under 28 U.S.C. §1404(a). See Arabian v. Bowen, 1992 U.S. App. LEXIS 15624 (4th Cir. 1992) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)). The defendant bears a heavy burden of showing that the balance of interests weighs strongly in his favor in a motion to transfer. See id. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)); see also Excelsior Designs, Inc. v. Sheres, 291 F.Supp.2d 181 (E.D.N.Y. 2003)(Plaintiff's choice of forum is generally entitled to great weight and should not be disturbed unless other factors weigh strongly in favor of transfer of venue); Oriska Ins. Co. v Power P.E.O., Inc., 317 F.Supp.2d 161 (N.D.N.Y. 2004)(Plaintiff's choice of forum is ordinarily entitled to considerable weight unless there is little connection between the forum and the facts); Miller v CONRAIL, 196 FRD 22 (E.D. Pa. 2000); Vass v Volvo Trucks N. Am., Inc., 304 F.Supp.2d 851 (S.D.W.Va. 2004)(Plaintiff's choice of venue should not be lightly disturbed). URRC's choice of South Carolina is entitled great weight in light of the many connections between South Carolina and the facts. Defendants cannot meet their burden of showing that the balance of interests weighs strongly in favor of their motion to transfer venue.

Defendants attempt to relieve their burden by citing a case from the Seventh Circuit to the effect that the Plaintiff's choice of venue should carry less weight in a declaratory judgment action. See Hyatt Int'l. Corp. v. Coco, 302 F.3d 707 (7th Cir. 2002). Notably, this is not an argument that New York is a more appropriate forum than South Carolina, only that URRC's choice of South Carolina is not entitled to much weight. Regardless, Defendants have not presented and URRC has not uncovered any precedent from either the Fourth Circuit or the District of South Carolina which adopts the reasoning in Hyatt. URRC's choice of South

Carolina as the forum should thus carry the same weight it would in any other type of action. This is particularly so where, as here, the contacts and connections with South Carolina are overwhelming.

Under 28 U.S.C. §1404(a), the Court may transfer venue to any district or division where the action might have been brought, for the convenience of the parties and witnesses and in the interest of justice. Courts in the District of South Carolina exercise broad discretion in reviewing issues of the convenience and fairness and do so on an individualized, case-by-case basis. See Red Light, LLC v. American Traffic Solutions, Inc., 2006 U.S. Dist. LEXIS 10195, *10 (D.S.C. 2006). "Transfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other." Gateway Gaming, LLC v. Custom Game Design, Inc., 2006 U.S. Dist. LEXIS 69402, *16 (D.S.C. 2006) (citing DeLay & Daniels, Inc. v. Allen M. Campbell Co., General Contractors, Inc., 71 F.R.D. 368, 372 (D.S.C. 1976)). Neither the convenience of the parties and witnesses nor the interest of justice warrants the transfer of this case from the District of South Carolina to the Southern District of New York. Indeed, transferring venue to the Southern District of New York would merely relieve Kohut and a couple of witnesses of the burden of traveling to South Carolina while imposing upon URRC the burden of paying for multiple officers and directors and numerous witnesses to travel to New York.

1. **Convenience of Parties and Witnesses**

The convenience of the parties and witnesses, including non-party witnesses, weighs strongly in favor of leaving venue in South Carolina.

a. *Kohut's witnesses are neither crucial nor unavailable.*

Defendants claim that the three employees of Founders are "crucial" non-party witnesses to Kohut's right to compensation. In fact, it is difficult to comprehend how any witness from

7

Founders might offer crucial testimony. In the first instance, we would not anticipate any dispute about the testimony they might give concerning offers and counteroffers. Founders offered what it offered; URRC countered as it did; the parties did not reach a meeting of the minds. It is unlikely there will be any controversy at all concerning these matters, notwithstanding Kohut's dramatic arguments that only Founders can describe the negotiations. More to the point, testimony about these issues is ultimately irrelevant. The Founders Letter of Intent expired long before negotiations finally broke down. Even with extensions, the exclusivity provision of the Letter of Intent expired not later than August 18, 2006. After that, URRC could negotiate with anyone and had no further obligation to negotiate with Founders even assuming that it had some prior obligation; and any offer rejected after that date would have no bearing upon Kohut's entitlement to fees. In short, it is doubtful that a witness from Founders would be necessary, much less crucial, to a decision in this case.

It is also doubtful that a Founders witness would be "unavailable" in any legally meaningful way. Kohut claims that none of the three partners of Founders is likely to travel to South Carolina to testify at trial because of the inconvenience involved. This argument is suspect, given Kohut's close working relationship with Founders. Kohut works in the same building as Founders and actually maintains his primary office within Founders' office space. In fact, there is no way to get to Kohut's office without going through Founder's office! Kohut can walk out of his office, take several steps in either direction, and ask any of the three Founders employees to assist him by testifying in this case. It is no coincidence that Kohut shares office space with Founders. Kohut considers Founders' senior partner, Warren Haber, a close personal friend. Kohut receives much of his company's work through Haber and has invested with Haber in a number of other businesses. Haber even testified on Kohut's behalf in a lawsuit Kohut filed

against Burpee Seed Company for firing him. Kohut and Founders are not operating at arm's length, and it is likely that Haber (and presumably the other two Founders officers) if asked would travel to South Carolina to testify on Kohut's behalf as he has in the past.

But even if the Founders employees refused to travel to South Carolina, they are surely "available" to testify. Pursuant to Rule 45, they can readily be subpoenaed to produce documents or give testimony in New York. They can provide testimony, as witnesses do every day, through videotaped depositions. And, if necessary, they could testify live at trial through the teleconferencing facilities available in the courtrooms of New York and South Carolina. Kohut's defense will not be hampered in any meaningful way even if his friends at Founders prefer not to fly to Spartanburg for the trial.

We also want to address Kohut's accusation that URRC set in motion some grand scheme to deprive him of testimony by including a standard confidentiality provision in URRC's settlement agreement with Founders. This litigation was the last thing on our minds when that provision was included. If it had crossed our minds, we would never have dreamed we might be able to keep evidence from Kohut, or even to complicate his life, by use of a confidentiality provision. That's just silly. In any event, URRC has waived the confidentiality provision so that any Founders employee may communicate the details of the settlement to Kohut and participate freely as a witness in this action. There is simply no basis for Kohut's contrived allegation that URRC is somehow attempting to gag witnesses or otherwise prevent them from helping him if they choose to do so.

    **b.**  *Significant non-party witnesses for Plaintiff will be unavailable if the action is transferred to the Southern District of New York*

Defendants also assume that the Founders witnesses are the only significant non-party witnesses in this action. They are mistaken. Among the third party witnesses who will be

9

essential to testify concerning the scope and quality of Kohut's services are Matthew Myers, Vice President of First Citizens Bank in Spartanburg and Andy Westbrook, President of The Peoples National Bank in Easley, who can testify about Kohut's negative impact on URRC's attempts to procure funding. Auditor Larry Fritz and tax accountants Bill Kastler and Owen West, both of PriceWaterhouseCoopers in Spartanburg, and Allen Robinson and Mary Peasley of Cherry Bekaert and Holland in Greenville, can testify that Kohut hindered their audit work with URRC by requiring the auditors to explain their decisions and work, causing unnecessary costs and delays. Chris Jones and Martin Gilmore of BB&T Capital Partners, and Bert Newsome of BB&T Capital Markets, all located in Winston Salem, NC, will testify that Kohut deterred BB&T from participating as an investor by failing to provide them with pertinent information which they requested. Mike Reeves, Bob Getsinger, Bill Adams, Chuck Robinson and Ronnie Holcomb, the managers and former owners of DMS, can testify that Kohut performed a flawed due diligence review for URRC's purchase of DMS and did not participate in structuring or funding the deal.

Each of these fifteen non-party witnesses will provide URRC with important testimony to refute Kohut's claims for quantum meruit, unjust enrichment, fees for past CFO and investment banking services, fees for services in connection with the acquisition of DMS and fees for services in connection with a possible deal with NTR. Each of these fifteen non-party witnesses would be substantially inconvenienced by a transfer of venue to the Southern District of New York, and URRC could not guarantee that they would appear to testify on its behalf at trial in New York. They would, however, be willing to appear in the Spartanburg Division and have expressed a strong preference to testify in Spartanburg which is more convenient to them. Defendants' Motion to Transfer Venue would improperly shift the burden of litigation to URRC.

The balance of convenience to non-party witnesses weighs overwhelmingly in favor of keeping venue in the Spartanburg Division.

> 2. **Interests of Justice**
>
> > *a.   URRC did not lull Defendants into inaction.*

Despite Kohut's contentions, transferring venue to the Southern District of New York would not promote the interests of justice. His most appalling argument is that he was "lulled" into believing that URRC was close to settlement so that he would hesitate to file suit. That is just plain wrong.

Kohut and URRC negotiated for months about how Kohut would be compensated in the future. These negotiations began in June of 2005; they continued in the spring of 2006; and they proceeded until the impasse that led to this suit. In almost every conversation during recent months, Kohut threatened that he would resort to a lawyer if URRC did not offer him a satisfactory compensation package. Finally, Gutierrez offered to extend Kohut's consulting agreement for a year, at $8,500 per month, and pay Kohut an additional $100,000 bonus if he helped complete a potential deal with NTR. Kohut countered on February 7, 2007, by demanding a settlement payment of $375,000 on the spot to walk away from their business relationship. Gutierrez responded by saying, "John, you're crazy," and re-iterated his earlier offer. Kohut rejected this and told Gutierrez that he would have his attorney call URRC's attorney.

URRC thus understood from Kohut that the parties had reached an impasse in negotiations because Kohut was referring his claims to his attorney. Kohut stopped communicating with URRC. Gutierrez and URRC's attorney, Frank Williams, waited more than a week for Kohut's attorney to call but heard nothing. Finally, after waiting to hear from Kohut's attorney for nearly two weeks, URRC filed this action on February 20, 2007, concerned that

Kohut's continued threat of litigation would cloud its ability to move forward with a new investor and hoping to obtain a final determination that would remove the cloud of this long-running dispute. As of February 20, Kohut's attorney still had not contacted URRC's attorney.

At no point during their negotiations with Kohut did Gutierrez or any other officer of URRC attempt to lull Kohut into believing that he should refrain from litigation. Gutierrez did not tell Kohut that they were "very close" to reaching an agreement or that Kohut should not "do anything" while the issue was being worked out. In fact, the parties were not close to an agreement, and Kohut could see that. After extended negotiations, the parties were hundreds of thousands of dollars apart – Kohut was demanding $375,000 immediately and URRC had offered only to continue paying him $8,500 per month for the next year and give him a bonus of $100,000 if the potential deal with NTR closed. URRC did not try to stop Kohut from consulting his attorney about the compensation issue and fully expected that Kohut would take whatever steps he believed served his best interests.

If anything, Kohut is unhappy because URRC decided not to wait indefinitely for him to seek a judicial resolution of the controversy and therefore acted in its own interest. Kohut claims that he always believed he was owed compensation for work performed under the agreements he entered in 2001, 2002 and 2004, prior to entering his consulting agreement. If Kohut were entitled to fees under the old agreements or otherwise (which he is not), he had years to pursue those claims but did nothing. Does he contend he was "lulled into a sense of complacency" through all of those years without ever realizing it? It cannot have surprised Kohut, in light of his continuing threats of litigation, that URRC finally filed its declaratory judgment action to resolve these issues and clarify its financial obligations. This was not a race to the courthouse, and URRC certainly did not act suddenly or precipitously no matter what Kohut now wants to say.

URRC did not engage in any procedural fencing by filing this action in the Spartanburg Division. Instead it sought the final determination of rights and obligations that a declaratory judgment action is designed to provide. Transfer to the Southern District of New York is not warranted on the basis of Kohut's allegation that URRC acted improperly.

      b.    ***Adirondack Capital Partners, Inc.***

Defendants argue in passing that URRC, by seeking to bind "affiliated parties" in its Complaint, is making a veiled reference to Adirondack Capital Partners, Inc. ("Adirondack"), an entity that was named in a January 24, 2002, agreement between Defendants and URRC. Defendants argue that URRC is attempting to skirt personal jurisdiction to bind Adirondack, a New York entity with no ties to South Carolina. Defendants claim that URRC could only enforce a declaratory judgment against Adirondack in New York and that this is somehow a factor that weighs in favor of transferring venue.

Defendants are again jumping to wild conclusions about URRC's motives. URRC has received numerous agreements from Defendants over the years on different letterheads, which list different entities that appear to be associated with Kohut. In an abundance of caution, URRC referred to "affiliated parties" in its Complaint, concerned that it might omit an entity through which Kohut would later claim he was providing his services. The truth is much simpler than Kohut would have the Court believe.

      c.    ***The costs of litigating in the Southern District of New York militate against transferring venue.***

In assessing the interests of justice, courts properly consider the costs and practical problems of litigation. See Gateway Gaming, 2006 U.S. Dist. LEXIS 69402 at *17. URRC is painfully conscious of the difficulty and expense of litigating in the Southern District of New York, having recently settled the Founders suit there. The Spartanburg Division holds a sizable

advantage for both parties in terms of cost to litigate. South Carolina attorneys do not charge the high rates of New York attorneys. Because URRC has multiple officer and employee witnesses, its costs to travel to New York and reside there during a trial are dramatically greater than Kohut's expense in getting himself to South Carolina. Lodging, food, and transportation, conference facilities and litigation support services are all cheaper in South Carolina than in New York. Spartanburg is convenient both to the Charlotte, NC airport (62 miles) and the Greenville-Spartanburg airport (20 miles). And, as discussed above, there are numerous non-party witnesses who find it much more convenient to testify in a South Carolina trial rather than traveling to New York. Kohut may be troubled by the idea of presenting one or two Founders witnesses by way of deposition transcript or video; imagine the specter of a trial in New York where URRC was required to present testimony of more than a dozen witnesses by deposition. Given the large number of party and non-party witnesses URRC expects to call, it makes no sense to transfer the case to New York and thereby shift a substantial, additional burden of litigation costs to URRC.

## CONCLUSION

URRC, as the plaintiff, is entitled to deference in its choice of venue. This is a South Carolina case involving a South Carolina business with South Carolina offices and owners in a dispute with a New York consultant who undertook to represent the interest of that South Carolina business through contracts signed in South Carolina. In addition, now that Kohut has added Carlos Gutierrez as a third-party defendant, the Court should also give deference to Mr. Gutierrez's right to defend himself in the county of his residence, Spartanburg County.

Transferring this action to the Southern District of New York would not serve the convenience of the parties or witnesses. URRC has eliminated Kohut's alleged major concern by waiving the confidentiality provision in the Founders settlement so that his friends at Founders

may talk with him and assist him as they choose. If Kohut's business colleagues at Founders prefer not to travel to South Carolina on his behalf, they can be subpoenaed to give videotaped depositions or perhaps even testimony via teleconference from New York. Additionally, transfer of venue would inconvenience and financially burden numerous party witnesses (Carlos Gutierrez, Gerry Fishbeck, Lawson Hayes, Barbara Gutierrez, and Darrell Dennis) and fifteen potential non-party witnesses who reside in or near the Spartanburg Division. URRC cannot guarantee these witnesses will travel to New York on its behalf, and their testimony will surely be more difficult to arrange than that of one or more of the three Founders partners who share offices with Kohut.

Nor would a transfer of venue promote the interests of justice. URRC strongly denies Kohut's allegations that it somehow lulled him into not filing suit and then raced to the courthouse to gain tactical advantage. URRC never discouraged Kohut from filing suit but instead stood by for a reasonable time even after he announced that he was turning the matter over to his lawyer. Kohut should not be permitted to rest on his supposed rights but then cry foul when URRC finally seeks a proper judicial determination of those rights.

Finally, transferring venue to New York would add and shift substantial costs to URRC, costs much greater than those which would be borne by Kohut if the case remains in the Spartanburg Division. Accordingly, URRC respectfully requests that this Court deny Defendants' Motion to Transfer Venue to the Southern District of New York.

This 7th day of May, 2007.

                                          Respectfully submitted,

                                          s/Michael J. Giese
                                          Michael J. Giese (#2094)
                                          Thomas M. Larkin (#9480)
                                          Leatherwood Walker Todd & Mann, P.C.
                                          300 East McBee Avenue, Suite 500
                                          Post Office Box 87
                                          Greenville, SC 29602
                                          (864) 242-6440
                                          (864) 240-2475 (fax)
                                          mgiese@lwtm.com
                                          tlarkin@lwtm.com

                                          ATTORNEY FOR PLAINTIFF