**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED RESOURCE RECOVERY CORPORATION,<br><br>        Plaintiff,<br><br>   -against-<br><br><br>RAMKO VENTURE MANAGEMENT, INC. and JOHN KOHUT,<br><br>        Defendants. | Civil Action No.  07-9452 (RWS) |

| |
|---|
| RAMKO VENTURE MANAGEMENT, INC.,<br><br>        Third-Party Plaintiff,<br><br>   -against-<br><br><br>CARLOS GUTIERREZ,<br><br>        Third-Party Defendant. |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AND THIRD-PARTY DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY COMPLAINT PURSUANT TO FED. R. CIV. PRO 12(c)**

---

**PORZIO, BROMBERG & NEWMAN, P.C.**
156 West 56th Street
Suite 803
New York, New York 10019-3800
(212) 265-6888

*Attorneys for Plaintiff United Resource Recovery Corporation and Third-Party Defendant Carlos Gutierrez*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

SUMMARY OF ARGUMENT ............................................................. 1

PROCEDURAL HISTORY................................................................. 4

STATEMENT OF FACTS ................................................................. 5

    The Preliminary Contingent Fee Agreements...................................... 6

    Ramko Alleges that the January 2004 Agreement Was Superseded in
    December 2004 by an Oral Agreement .................................................. 8

    The May 2005 Consulting Agreement.................................................. 10

ARGUMENT ................................................................................... 12

I.    STANDARD ON A MOTION FOR JUDGMENT ON THE PLEADINGS ....... 12

II.    EACH OF RAMKO'S COUNTERCLAIMS SEEKING A "BREAK-UP
    FEE" IS BARRED BY THE STATUTE OF FRAUDS....................................... 12

    The Breach of Contract Claim for a "Break-Up Fee" Is Barred by General
    Obligations Law § 5-701(a)(10) ......................................................... 13

    Claims for a "Break-Up Fee" Are Also Barred Under Theories of Quantum
    Meruit and Unjust Enrichment............................................................ 15

    Ramko Cannot Collect a Break-Up Fee Under the Doctrine of Promissory
    Estoppel........................................................................................ 16

III.    EACH OF RAMKO'S CLAIMS FOR FEES FOR "PAST WORK" UNDER
    THE JANUARY 2004 LETTER IS BARRED .................................................. 16

    The Breach of Contract Claim Fails for Lack of Consideration............................ 17

    The January 2, 2004 Letter Agreement Provided that any Compensation Was
    Conditioned Upon a Closing of Private Placement Funds ................................... 17

    The Existence of a Contract Precludes Quasi-Contract Claims............................ 18

IV.  RAMKO'S CLAIMS BASED UPON AN ORAL AGREEMENT FOR
ADDITIONAL INVESTMENT BANKING SERVICES ARE BARRED ......... 19

The Statute of Frauds Bars Enforcement of any Alleged Oral Agreement and
Quasi-Contract Claims........................................................................................... 19

The Alleged Oral Agreement for Investment Banking Services is Void for
Vagueness .............................................................................................................. 19

V.  THE MAY 2005 CONSULTING AGREEMENT SUPERSEDED ALL
PAST AGREEMENTS.................................................................................... 20

VI.  RAMKO'S FRAUD CLAIM SHOULD BE DISMISSED .................................. 22

A Contract Claim Dressed up as a Fraud Claim is Insufficient............................ 22

Damages are Limited to Out-of-Pocket Losses .................................................... 23

CONCLUSION..................................................................................................................... 24

ii

## TABLE OF AUTHORITIES

### CASES

Page(s)

120 Greenwich Development Associates, LLC v. Reliance Ins. Co., 2004 WL.
1277998 (S.D.N.Y. 2004)......................................................................17

Arnone v. Deutsche Bank, AG, 2003 U.S. Dist. LEXIS 7941 (S.D.N.Y. 2003)...............17

Belotz v. Jeffries & Co., Inc., 213 F.3d 625 (2d Cir. 2000) .........................................15, 16

Bennerson v. City of New York, 2004 WL. 902166 (S.D.N.Y. 2004).............................12

Bergin v. Century 21 Real Estate Corp., 234 F.3d 1261 (2d Cir. 2000).........................20

Bibeault v. Advanced Health Corp., 1999 WL. 301691 (S.D.N.Y. 1999) .......................16

Brass v. American Film Technologies, Inc., 987 F.2d 142 (2nd Cir. 1993).....................12

Bronner v. Park Place Entertainment Corp., 137 F. Supp. 2d 306 (S.D.N.Y. 2001).........14

City of Yonkers v. Otis Elevator Co., 844 F.2d 42 (1988) ............................................18

Faconti v. Potter, 242 Fed. Appx. 775 (2d Cir. 2007) ................................................12

Freedman v. Chemical Constr. Corp., 43 N.Y.2d 260, 401 N.Y.S.2d 176
(1st Dep't 1977), reargument granted by, modified by, 200 N.Y. App. Div.
Lexis 10270 (1st Dep't 2000) ...............................................................13

Freedman v. Pearlman, 271 A.D.2d 301, 706 N.Y.S.2d 405 (App. Div. 2000)...............20

Greystone Partnerships Group, Inc. v. Koninklijke Luchtvaart Maatschappij, 815
F.Supp. 745 (S.D.N.Y. 1993)................................................................14

GSGSB, Inc. v. New York Yankees, 862 F. Supp. 1160 (S.D.N.Y. 1994).......................23

Holloway v. King, 161 Fed. Appx. 122 (2d Cir. 2005) .................................................21

Khreativity Unlimited, Inc. v. Mattel, Inc., 242 F.3d 366 (2d Cir. 2000),
cert. denied 534 U.S. 822 (2001) ...........................................................15

Kosower v. Gutowitz, 2001 WL. 148840 (S.D.N.Y. 2001) ............................................20

Kreiss v. McCown De Leeuw & Co., 131 F. Supp. 2d 428 (S.D.N.Y. 2001) ...................18

Lama Holding Corp. v. Smith Barney, Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996).....23

Levine v. Zadro Products, Inc., 2003 WL. 21344550 (S.D.N.Y. 2003) ...........................15

M-101, LLC v. in Demand, LLC, 2007 U.S. Dist. LEXIS 88913 (S.D.N.Y. 2007) .........12

Martin Delicatessen, Inc., 52 N.Y.2d 105, 436 N.Y.S.2d 247 (1981) ...............................20

Minichiello v. Royal Business Funds Corp., 18 N.Y.2d 521, 277 N.Y.S.2d 268
       (1966) ...................................................................................................................15

Orderline Wholesale Distributors, Inc. v. Gibbons, Green, van Amerongen, Ltd., 675
       F.Supp. 122 (S.D.N.Y. 1987).............................................................................14

Prescient Acquisition Group, Inc. v. MJ Publishing Trust, 2006 WL. 2136293
       (S.D.N.Y. 2006) ..................................................................................................15

R.B. Ventures, Ltd. v. Shane, 112 F.3d 54 (2d Cir. 1997) ..............................................18

Reprosystem, B.V. v. SCM Corp., 727 F.2d 257 (2d Cir. 1984).......................................18

Ripple's of Clearview, Inc. v. LeHavre Assocs., 88 A.D.2d 120, 452 N.Y.S.2d 447
       (App. Div. 1982) ..................................................................................................18

Rosbach v. Industry Trading Co., 81 F. Supp. 2d 522 (S.D.N.Y. 2000) ...........................14

Sea Trade Co., Ltd. v. FleetBoston Financial Corp., 2004 WL. 2029399
       (S.D.N.Y. 2004) ..................................................................................................16

Seven Star Shoe Co. v. Strictly Goodies, Inc., 628 F. Supp. 1237 (S.D.N.Y. 1986) ........15

Spanierman Gallery Profit Sharing Plan v. Arnold, 1997 WL. 139522
       (S.D.N.Y. 1997) ..................................................................................................23

Sugerman v. MCY Music World, Inc., 158 F. Supp. 2d 316 (S.D.N.Y. 2001).................16

Textiles Network Ltd. v. DMC Enterprises, LLC, 2007 U.S. Dist. LEXIS 64247
       (S.D.N.Y. 2007) ..................................................................................................18

Tower Int'l, Inc. v. Caledonian Airways, Ltd., 133 F.3d 908 (2d Cir. 1998) ..............14, 15

Vox Advertising and Design, Inc. v. Makela, 2000 WL. 1708181 (S.D.N.Y. 2000)........23

Weissman v. Seiyu, Ltd., 2000 WL. 42205 (S.D.N.Y. 2000) ...........................................16

Zeising v. Kelly, 152 F. Supp. 2d 335 (S.D.N.Y. 2001).........................................14, 15, 23

iv

**STATUTES**

General Obligations Law §5-701(a)(10)................................................................13, 15, 19

General Obligations Law §5-1105................................................................................17

**RULES**

Fed. R. Civ. Proc. 9(B) ............................................................................................22

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................12

Fed. R. Civ. Proc. 12(c) ...........................................................................................12

## SUMMARY OF ARGUMENT

One of the hallmark principles of contract law in New York State is that the Statute of Frauds bars oral agreements concerning compensation claims for negotiating the purchase or sale of any business interest. The counterclaims that defendant Ramko Venture Management, Inc. ("Ramko") has leveled against plaintiff United Resource Recovery Corporation ("URRC") are based upon those very types of oral agreements. Thus, Ramko's claims seeking damages for alleged breaches of contract should be dismissed as a matter of law due to the Statute of Frauds.

URRC filed this action in February 2007 seeking a declaration that URRC owes no fees to Ramko as it had demanded. Ramko's demands arise from its failed attempts to secure equity financing on URRC's behalf from 2001 through 2004 through private placement funding. In response to the complaint, Ramko has filed five separate counterclaims sounding in contract, quasi-contract and fraud. Sprawled across its pleading, Ramko alleges that URRC breached three separate agreements, two of which are based upon oral agreements, while the third is based upon a side letter agreement. The three agreements alleged to have been breached are:

(a) a "break-up fee" oral agreement purportedly reached in December 2004 that continually remained in effect thereafter;

(b) a January 2004 side letter agreement for "past work" provided by Ramko to URRC before January 2004; and

(c) a 2005 investment banking services oral agreement regarding Ramko's help in negotiating a corporate acquisition that concluded in mid-2005.

As to the "break-up fee," Ramko alleges that an oral agreement was reached in December 2004 that superseded and modified the parties' prior agreements. Ramko alleges that it located and negotiated a business opportunity in 2005 to infuse $15 million of equity financing into URRC by a venture capital company called Founders Equity SBIC, LLP ("Founders") in

exchange for a 62.5 percent stock interest in URRC. Ramko alleges that URRC signed a non-binding letter of intent with Founders on July 15, 2005, but that URRC later "reneged on" the deal in October 2006. Ramko thus alleges that it is now entitled to a "break-up fee" under the oral agreement, purportedly confirmed by an *unsigned* draft December 2004 agreement with URRC.

There was admittedly never any agreement, memorandum, or writing signed by URRC in December 2004 addressing a fee to Ramko for the Founders potential deal, nor is any allegation made to that effect. Ramko points only to the July 2005 letter of intent between URRC and Founders that nowhere addresses *any* fee or "break-up fee" to be paid to Ramko. Thus, it is undisputed that there is no writing even alleged to exist that confirms a fee or "break up" fee to Ramko based upon a potential stock sale to Founders. As such, as a matter of law, New York's Statute of Frauds bars any claim for a "break-up fee" for negotiating such a potential opportunity.

As to the so-called "past work" agreement contained in the January 2004 letter agreement, Ramko asserts that compensation, in the form of unspecified stock warrants, is owed for consulting services provided by Ramko *before* 2004. The claims based upon that letter fail because no lawful consideration was given in exchange for any purported promise by URRC to pay for such "past work." Further, the obligation to pay for past services was expressly conditioned upon Ramko closing on equity financing for URRC through private placement in the sum of $8 million, as specified under the accompanying January 2004 preliminary "Summary of Terms" agreement. Nowhere has Ramko pled, nor can it plead, that it secured or located such equity financing in exchange for a minority stake in URRC as contemplated under the "Summary of Terms" agreement.

Ramko's allegations based upon the third alleged agreement for investment banking services provided in mid-2005 rests upon its conclusory allegation that it gave "substantial assistance" regarding URRC's successful corporate acquisition of a silver recycling business called DMS. Ramko alleges that URRC agreed to pay it "fairly." The Statute of Frauds again precludes enforcement of any such alleged oral agreement to assist in negotiating a business purchase. Moreover, all of Ramko's claims based upon this alleged oral agreement fail because the purported amount of compensation paid is an essential contract term and must be definite. Alleging that one party agreed to pay another "fairly" is insufficiently vague, and thus, unenforceable.

In addition, Ramko refers to the fact that the parties ultimately signed a new, written Consulting Agreement as of May 2005. What Ramko ignores is that the signed agreement, under which URRC paid Ramko $8,500 per month for two years beginning in June 2005 for all consulting services, specifies that it "supersedes" all prior discussions and preliminary agreements regarding the parties' relationship, and that any separate agreement, if reached, would be contained in a separate agreement to be mutually agreed upon. Thus, the May 2005 Consulting Agreement's express provisions provide further, independent grounds for dismissal of Ramko's contract-related counterclaims.

Finally, Ramko's fifth counterclaim for fraud against URRC and Third-Party Defendant Carlos Gutierrez fails because the allegation that Mr. Gutierrez and URRC never intended to pay Ramko is merely a contract claim disguised as a fraud claim. The Courts routinely reject such tactic. The fraud claim also fails because Ramko pleads expectation damages based upon the alleged "fraud," yet damages for fraud, under settled New York law, are limited to out-of-pocket monies actually expended. No such damages have been pled or exist.

Each of the counterclaims, therefore, should be dismissed with prejudice.

## PROCEDURAL HISTORY

On February 20, 2007, URRC filed a complaint for a declaratory judgment against Ramko and its president, John Kohut, in the United States District Court for the District of South Carolina. (Fellner Decl., Ex. 1).[1] URRC seeks a declaration that Ramko and Mr. Kohut are not entitled to any fees as demanded in connection with any actual or alleged agreement. Specifically, URRC requests a declaratory judgment that defendants "are entitled to no fees, expenses or compensation from Plaintiff other than consulting fees of $8,500 per month until termination consistent with the written [May 2005] consulting agreement between the parties." (Id. at. 4).

On April 4, 2007, Ramko filed an "Answer and Counterclaim and Third-Party Complaint" against URRC's principal, Carlos Gutierrez. (Id., Ex. 2 [the "Answer"]). The five separate counterclaims in the Answer seek damages for:

(1) Breach of contract (Count one) against URRC due to the alleged oral December 2004 "break-up fee" agreement; "past work" written side letter agreement on January 2, 2004; and a subsequent "investment banking services" agreement orally reached in 2005;

(2) Unjust enrichment (Count two) against URRC arising from the services allegedly performed under each of the three alleged agreements;

(3) *Quantum meruit* (Count three) against URRC arising from the services allegedly performed under each of the three alleged agreements;

(4) Promissory estoppel (Count four) against URRC and Carlos Gutierrez arising from the services allegedly performed under the three alleged agreements; and

---

[1]    True copies of URRC's complaint and Ramko's Answer with Counterclaims and Third-Party Complaint (with attached agreements annexed thereto) are annexed as Exs. 1 and 2, respectively, to the accompanying declaration of Gary M. Fellner, Esq., dated January 28, 2008 ("Fellner Decl.").

(5) Fraud (Count five) against URRC and Carlos Gutierrez arising from the alleged services performed pursuant to one or more oral agreements.

In May 2007, URRC and Mr. Gutierrez filed a reply to the counterclaims and an answer to third-party complaint. (Fellner Decl., Exs. 3 and 4, respectively).

Ramko then filed a motion with the United States District Court of South Carolina to transfer the action to the Southern District of New York. The District Court of South Carolina granted Ramko's motion, agreeing with it that most of the contacts are centered in New York. The District Court thus transferred the action to this Court by order dated October 15, 2007. URRC and Mr. Gutierrez then promptly retained new counsel in New York.

Meanwhile, prior to the venue transfer, extensive document exchanges occurred between the parties concerning the various claims raised. Ramko produced over 5,000 documents in response to URRC's document requests, and URRC has produced over 23,000 documents in response to Ramko's requests.

## STATEMENT OF FACTS

URRC is a South Carolina corporation principally located at 5396 North Blackstock Road, Spartanburg, South Carolina. (Complaint, ¶ 1). It is involved, *inter alia*, in plastic recycling technology. (Answer, ¶ 33). URRC's principal officer is Carlos Guitierrez, a South Carolina resident. (Answer, ¶ 28).

Ramko is a New York corporation that provides, among other things, consulting services that include locating private investors and negotiating various business deals and opportunities. (Complaint, ¶¶ 3, 5-11; Answer, ¶¶ 4, 6-8, 10). Ramko's president is John Kohut, a New York resident. (Answer, ¶ 3).

**The Preliminary Contingent Fee Agreements**

URRC and Ramko began their relationship in 2001 pursuant to a written agreement dated August 17, 2001. (Complaint, ¶ 5; Answer, ¶ 33). As set forth in the Answer, URRC maintains a "proprietary 'bottle-to-bottle' waste-recycling technology 'capable of extracting re-usable raw material from used plastic bottles." (Answer, ¶ 33). To promote and enhance that technology, Ramko agreed to provide assorted consulting and financial services on a day-to-day basis to URRC to help in accounting matters, provide long-range financial guidance, and provide investment banking services "of different sorts at different times." (Complaint, ¶¶ 5-10; Answer, ¶¶ 33, 38).

According to Ramko, Ramko had been engaged to initially perform the above tasks and to try to raise $7.2 million on terms contained in a preliminary signed fee agreement setting forth Ramko's fee if it succeeded in raising capital. (Answer, ¶ 6). It is undisputed that the 2001 agreement lapsed and was superseded by a subsequent written fee agreement reached in 2002. (Id.). Similar equity capital was again sought in 2002 by way of private placement, but again, Ramko was unsuccessful and earned no fee. (Id., ¶ 7; Complaint, ¶ 6). That agreement also lapsed and was abandoned.

In January 2004, the parties tried again. They entered into a new agreement set forth in three new separate documents signed on January 2, 2004. (Answer, ¶ 38). One of those writings was a "Summary of Terms" outlining the private placement that Ramko was to try to secure. The amount contemplated was $8 million in exchange for a 40-percent minority interest in URRC. (Answer, Ex. A, January 2004 Summary of Terms at 1). The Summary of Terms contained a 180-day exclusivity period with an approximate closing date of June 30, 2004. (Id. at 6). Ramko's fee for placing such financing was a finder's fee of ten percent of the capital raised

($800,000), plus a fixed expense allowance of three percent or $240,000.  (Id. at 2).   The Summary of Terms also provided:

> The term sheet … does not constitute a binding agreement or commitment by Ramko or any of its affiliates.  Any agreement or commitment shall only be contained in definitive agreements … to be negotiated, executed and delivered, if at all, after the completion of appropriate due diligence and fulfillment of the other conditions referred to above.

(Answer, Ex. A, January 2004 Summary of Terms at 7).

To protect Ramko from losing a fee if URRC closed on similar financing with another party on the same terms and conditions as Ramko would try to secure for it under the Summary of Terms, a separate signed letter also dated January 2, 2004 accompanied the Summary of Terms.  That letter agreement provided for a "break-up fee" of $300,000, plus warrants in URRC if Ramko secured such financing, stating:

> Should Ramko be in the position to close such transactions, on substantially the terms outlined [in the Summary of Terms], and if, for any reason, [URRC] chooses to accept alternative funding or a strategic investment, Ramko shall be entitled to, as a break-up fee, compensation equal to its minimum fee ($300,000 plus warrants) less any amount contractually due and payable or paid under the enclosed Summary of Terms.

(Answer, Ex. A, January 2, 2004 letter at 1).

The third document signed on January 2, 2004 was a separate writing called "side letter" that said:

> Ramko and [URRC] have agreed that *in consideration of past work* on [URRC's] behalf, [URRC] shall issue to Ramko or its designee a 10 year warrant to purchase up to 4,000 shares (*post private placement closing*) of the Company's common stock … at $200 per share (based on the capital structure outlined in the Summary of Terms).

(Answer, Ex. A, January 2, 2004 "side letter" at 1) (emphasis added).

Once again, it is undisputed that no funds were raised under the preliminary January 2004 agreement, no alternative funding was ever discussed or advanced, and no fee was earned.

**Ramko Alleges that the January 2004 Agreement Was**
**Superseded in December 2004 by an Oral Agreement**

Nearly a year later, Ramko sought to secure new private placement funding for URRC's business expansion. This new funding prospect arose after Ramko gained the interest of Founders, a New York company, to invest in a majority stake in URRC. According to Ramko:

> Founders noted that URRC's plan was to raise $8 million initially … but Founders came to the conclusion, towards the end of 2004, that it did not want to rely on the vagaries of URRC's ability to raise the second $8 million. Founders accordingly advised URRC in late 2004 that Founders would be willing to explore a transaction with URRC pursuant to which Founders would invest $15 million in exchange for immediate control of URRC.

(Answer, ¶ 39). As such, after the January 2, 2004 preliminary agreement was abandoned and the funding as contemplated never materialized in any respect, Ramko prepared and sent URRC a new preliminary Summary of Terms, a side letter dated December 10, 2004, and another letter agreement dated December 10, 2004 (collectively, "the December 10, 2004 Unsigned Proposed Revisions"). (Answer, ¶ 41 and Ex. B thereto). According to the new proposed Summary of Terms, Ramko would try to raise from Founders up to $25,000,000 in equity financing in exchange for a controlling 62.5% interest in URRC. (Answer, Ex. B, December 10, 2004 Summary of Terms p. 1).

Ramko's *proposed* compensation for locating and negotiating such a sale to Founders, assuming that at least $15 million was raised, was to be the greater of ten percent of the equity placed, not to exceed $600,000, or five percent of the equity placed, plus estimated fees of $250,000. (Id. at 2). The new proposed Summary of Terms contained a 180-day exclusivity period and an approximate closing date of June 30, 2005. (Id. at 6).

The separate letter dated December 10, 2004 that accompanied the new Summary of Terms again provided for a "break-up fee" of $300,000, plus warrants in URRC, if Ramko secured funding "on substantially the terms outlined" in the new proposed Summary of Terms, and URRC accepted similar "alternative" funding elsewhere. (Answer, ¶ 46; Ex. B, December 10, 2004 letter at 1).

Ramko alleges that URRC advised that it would proceed with Founders' "discussions," and that Founders was prepared to move forward in March 2005. (Answer, ¶ 40). Based upon the completely new financing under consideration (whereby URRC was being asked to give up complete control of the corporation to an outside investor for twice the capital infusion previously contemplated under the January 2004 agreement), Ramko alleges that it "had prepared [the December 2004] revisions of the January 2, 2004 agreements designed to scale down Ramko's fees as a percentage of the larger deal that was now under discussion." (Answer, ¶ 41).

It is undisputed that *none of the documents* that comprise the December 10, 2004 Revisions were ever signed. (Answer, ¶ 41; Ex. B). Nonetheless, according to Ramko, these three proposed documents:

> represent the parties' *oral agreement* regarding the revised terms of Ramko's compensation within the context of the larger, $15 million deal that was now, as of late 2004, being discussed; and these remained the *agreed-upon terms of Ramko's compensation going forward*.

(Answer, ¶ 41) (emphasis added).

After Ramko allegedly revived negotiations for a possible sale to Founders, URRC and Founders entered into a non-binding Letter of Intent ("LOI") on July 15, 2005 "pursuant to which Founders would invest $15 million in exchange for 62.5% of URRC's equity." (Answer, ¶ 42; Ex. B, Ex. C, Letter of Intent at 1). The non-binding LOI was subject on its face to a host of

pre-closing conditions that ultimately never materialized.[2]  Nowhere is there any allegation in the counterclaims as to what fee, if any, URRC had agreed, in a signed writing, Ramko would earn if the Founders transaction had been consummated.  Indeed, the financing and stock sale under consideration in mid-2005 was completely different from the capital structure and minority stock sale contemplated in January 2004.

Nonetheless, according to Ramko, Founders was "ready, willing and able to close on the transaction contemplated by the July 15, 2005 Letter of Intent." (Answer, ¶ 43).  Ramko then states that URRC "reneged on" the Founders deal in October 2006 so that it could pursue "superior alternatives, namely potential deals with a company called NTR, and/or a potential deal with The Coca-Cola Company." (Id., ¶ 44).  It further alleges that URRC is currently in negotiations with NTR and Coke regarding alternative funding and/or a strategic investment. (Id., ¶ 45).  As such, Ramko asserts that it is entitled to a "break-up fee" based upon the December 2004 Unsigned Proposed Revisions.  (Answer, ¶¶ 47-48).

### The May 2005 Consulting Agreement

Ramko admittedly continued to work with URRC even though it failed to raise capital in accordance with the signed agreements in 2001, 2002 and January 2004. (Complaint, ¶ 8).  In the spring of 2005, with nothing having been signed since January 2, 2004, Ramko advised URRC that it was no longer willing to pursue "a private placement on the terms of the earlier agreements but instead [wanted to] be retained as a consultant for a fee of $8,500 per month." (Id., ¶ 9).  It is undisputed that the parties signed such an agreement, dated as of May 27, 2005. (Answer, ¶ 12, 36, 52; Complaint, ¶ 9; Fellner Decl., Ex. 5).  It is also undisputed that URRC

---

[2]    Ramko alleges in the counterclaims that Founders later sued URRC and the suit settled, somehow giving support for Ramko's claims.  (Answer, ¶ 43).  Lawsuits are often groundless, yet cost efficiency often will dictate a settlement.  Therefore, the allegation is completely irrelevant.

paid Ramko $8,500 per month for two years through mid-2007 for having performed consulting services relating to negotiations with Founders and other matters.  (Complaint, ¶ 11, Answer, ¶ 12).  The May 2005 agreement covered all consulting "services" Ramko could provide for six and a quarter days each month that would be "reasonably requested by …[URRC]."  Fellner Decl., Ex. 4 at 1).  That Consulting Agreement further states:

> 14. <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof and *supersedes all negotiations, prior discussions, and preliminary agreements made prior to the date hereof.  This agreement may be amended or replaced only in writing executed by all parties hereto*.

(<u>Id</u>., Ex. 4 at 5) (emphasis added).

In Paragraph 8(b) of the Consulting Agreement, the parties carved out investment banking services to be governed by separate agreement:

> Any service, other than the Services [as defined in the Consulting Agreement], including but not limited to investment banking services performed by [Ramko] for [URRC], are not covered by …this Agreement, and compensation for and the conditions for the performance of such services are or shall be the subject of *separate agreements mutually agreeable to the parties thereto*.

(<u>Id</u>., Ex. 4 at 4) (emphasis added).

It is undisputed that no investment banking services agreement was ever signed, and that no agreement was ever reached to quantify, in any definite terms, how much Ramko might be paid for its alleged investment services in negotiating an acquisition over and above the monthly $8,500.00.

# ARGUMENT

## I.

## STANDARD ON A MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings under Fed. R. Civ. Proc. 12(c) is governed by the same standard applicable to a motion under Federal Rule of Civil Procedure 12(b)(6). A case should be dismissed on a motion for judgment on the pleadings if it appears that the plaintiff cannot prove any set of facts to support its claims for relief. Faconti v. Potter, 242 Fed. Appx. 775, 777 (2d Cir. 2007). A court's "consideration is limited to the factual allegations . . . and documents attached to the [pleading sought to be dismissed] as an exhibit or incorporated in it by reference ..." Id. (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2nd Cir. 1993)); M-101, LLC v. in Demand, LLC, 2007 U.S. Dist. Lexis 88913 at *3 (S.D.N.Y. 2007). A motion for judgment on the pleadings may be made any time after the pleadings are closed. Bennerson v. City of New York, 2004 WL 902166 at *3 (S.D.N.Y. 2004) (Sweet, J.).

## II.

## EACH OF RAMKO'S COUNTERCLAIMS SEEKING A "BREAK-UP FEE" IS BARRED BY THE STATUTE OF FRAUDS

Ramko seeks to recover a "break-up fee" as set forth in the December 10, 2004 Unsigned Proposed Revisions because: 1) "it satisfied the performance conditions underlying its entitlement to the break-up fee by reason of the fact that Founders was ready, willing, and able to proceed with a transaction on terms that URRC had deemed acceptable pursuant to the orally agreed-upon December 10, 2004 [Proposed] Revisions" (Answer, ¶ 47); and 2) "URRC reneged on its understandings with Founders in order to pursue 'alternative funding or a strategic investment' with other parties who were then, and on information and belief remain, NTR and Coke." (Id., ¶ 48). Ramko also alleges that "[t]here is no time limit upon URRC's obligation to

pay the "break-up fee" and that "the only remaining condition precedent to URRC's liability for the break-up fee is the requirement that URRC accept alternative funding or a strategic investment from some other party." (Id.).

### The Breach of Contract Claim for a "Break-Up Fee" Is Barred by General Obligations Law § 5-701(a)(10)

The services at issue for locating Founders and recovering a fee or "break-up fee" in connection with that proposed transaction are squarely governed by § 5-701 of the New York General Obligations Law ("GOL"):

> a.    Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> 10.    Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest.
>
> "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. *This provision shall apply to a contract implied in fact or in law to pay reasonable compensation ....*

(Id.) (emphasis added). In applying the statute, the New York Court of Appeals has warned that "too restrictive an interpretation would defeat the purpose of the legislation," which is to protect against "false or exaggerated claims [that] can be asserted easily and disproved only with difficulty." Freedman v. Chemical Constr. Corp., 43 N.Y.2d 260, 267, 401 N.Y.S.2d 176, 181 (1977).

GOL § 5-701 (a)(10) has been held to apply to a variety of fee arrangements in which one party alleges a finder's fee, broker's fee, or commission based on its negotiation of a business opportunity. Indeed, courts will apply it to all such arrangements where the parties would be

expected to confirm their agreement in a signed writing.  See Tower Int'l, Inc. v. Caledonian Airways, Ltd., 133 F.3d 908 (2d Cir. 1998) (dismissal of a breach of contract claim alleging entitlement to a commission affirmed because "[a]n agreement to pay a 5% commission on a $3.2 million transaction does not strike us as 'the facts upon which oral contracts are likely made.'") (quoting Greystone Partnerships Group, Inc. v. Koninklijke Luchtvaart Maatschappij, 815 F.Supp. 745, 755-56 (S.D.N.Y. 1993)).  See also Bronner v. Park Place Entertainment Corp., 137 F.Supp.2d 306, 310 (S.D.N.Y. 2001) (signed writing required where plaintiff utilized his "know-how" and "know-who" that resulted in an agreement between those parties); Zeising v. Kelly, 152 F.Supp.2d 335, 343 (S.D.N.Y. 2001) (same) (quoting Orderline Wholesale Distributors, Inc. v. Gibbons, Green, van Amerongen, Ltd., 675 F.Supp. 122, 128 (S.D.N.Y. 1987)); Rosbach v. Industry Trading Co., 81 F.Supp.2d 522 (S.D.N.Y. 2000) (Sweet, J.) (dismissal of claim alleging oral finder's contract).

Ramko alleges that, pursuant to the Unsigned Proposed December 10, 2004 Revisions, it acted "as URRC's banker with respect to a major private placement [and] negotiated a deal, consistent with URRC's stated criteria, with … Founders . . . ." (Answer, ¶¶ 33-34).  Ramko also alleges it engaged "the interest of potential investors to proceed with a private placement transaction along the lines of the [December 2004] 'Summary of Terms.'" (Id., ¶ 39).  Ramko's allegations fall squarely within the statute.

Thus, Ramko's contract claim for a "break-up fee" fails, as the December 10, 2004 Unsigned Proposed Revisions, which Ramko alleges superseded and modified the prior January 2004 preliminary agreement, are unenforceable.[3]

---

[3]     The parties' only signed writing addressing a "break-up fee" is contained in the January 2, 2004 letter.  But that letter is not the basis of Ramko's "break-up fee" claims, as Founders is alleged to have not wanted to "rely on the vagaries of URRC's ability to raise the second $8
…Continued

**Claims for a "Break-Up Fee" Are Also Barred Under
Theories of *Quantum Meruit* and Unjust Enrichment**

Ramko's *quantum meruit* and unjust enrichment claims are likewise based upon the same facts as the breach of contract counterclaim. As stated above, GOL § 5-701(a)(10) specifically extends "to a contract implied in fact or in law." Thus, in Minichiello v. Royal Business Funds Corp., 18 N.Y.2d 521, 525, 277 N.Y.S.2d 268, 27-72 (1966), the New York Court of Appeals held that the statute mandates that "the contracts required to be evidenced by a writing include a contract or agreement for the compensation of a business broker . . . and that the requirement cannot be avoided by an action for compensation in *quantum meruit*." See also Khreativity Unlimited, Inc. v. Mattel, Inc., 242 F.3d 366 (2d Cir. 2000), cert. denied, 534 U.S. 822 (2001) (dismissal of express and implied-in-fact contract claims affirmed based on alleged oral finder's fee agreement); Zeising v. Kelly, 152 F.Supp.2d at 344-45; Seven Star Shoe Co. v. Strictly Goodies, Inc., 628 F.Supp. 1237, 1239 (S.D.N.Y. 1986) (Sweet, J). New York law thus prohibits the assertion of an unjust enrichment claim "in order to circumvent the writing requirement of the Statute of Frauds." Prescient Acquisition Group, Inc. v. MJ Publishing Trust, 2006 WL 2136293 at *5, 9 (S.D.N.Y. 2006) (citing Belotz v. Jeffries & Co., Inc., 213 F.3d 625 (2d Cir. 2000)). See also Tower Int'l, Inc. v. Caledonian Airways, Ltd., 133 F.3d 908 (2d Cir. 1998); Levine v. Zadro Products, Inc., 2003 WL 21344550 at *5 (S.D.N.Y. 2003); Zeising v. Kelly, 152 F.Supp.2d at 345-46.

---

…Continued

million," and was only willing to explore a transaction with URRC pursuant to which Founders "would invest $15 million in exchange for immediate control of URRC." (Answer, ¶ 39). Thus, the January 2004 agreement with Ramko was abandoned and lapsed, due to Ramko's failure to ever locate a minority stock investor to infuse $8 million, Founders' rejection of it, the expiration of the 180-day exclusivity period, and the proposed closing date of June 24, 2004 that was never extended.

**Ramko Cannot Collect a "Break-Up Fee" Under the Doctrine of Promissory Estoppel**

Ramko's promissory estoppel claim is also premised upon the same allegations that serve as the basis for its contract counterclaim. "Under New York law, the use of promissory estoppel to overcome the Statute of Frauds has been strictly limited to those rare cases when the circumstances render the denial of recovery 'unconscionable.'" Sugerman v. MCY Music World, Inc., 158 F.Supp.2d 316, 325 (S.D.N.Y. 2001) (citations omitted). "Other than in the most exceptional cases, courts have consistently held that lost fees . . . constitute insufficient injury to invoke the doctrine of promissory estoppel as a bar to the assertion of a Statute of Frauds defense.'" Belotz v. Jefferies & Co., Inc., 1999 WL 587916 at *5 (S.D.N.Y. 1999), aff'd 213 F.3d 625 (2d Cir. 2000). "An injury that flows naturally from the defendant's nonperformance of an unenforceable oral agreement cannot be deemed unconscionable. . . ." Sea Trade Co., Ltd. v. FleetBoston Financial Corp., 2004 WL 2029399 at *6 (S.D.N.Y. 2004).

Ramko has not pled an "unconscionable injury." Indeed, "[f]inder's fee damages 'represent expectation damages or the benefit of the oral contract, and do not qualify as unconscionable under the Statute of Frauds.'" Sugerman, 158 F.Supp.2d at 326 (quoting Bibeault v. Advanced Health Corp., 1999 WL 301691 at *7 (S.D.N.Y. 1999)); Weissman v. Seiyu, Ltd., 2000 WL 42205 at *10 (S.D.N.Y. 2000) ("plaintiff's loss of his [finder's and negotiator's] commission . . . [is] not enough to rise to the level of unconscionable.").

## III.

## EACH OF RAMKO'S CLAIMS FOR FEES FOR "PAST WORK" UNDER THE JANUARY 2004 LETTER IS BARRED

The second agreement upon which Ramko relies is the "past-work" agreement set forth in the letter dated January 2, 2004 that accompanied the Summary of Terms. The letter

agreement's terms for past work compensation are unenforceable for two reasons: lack of consideration and failure to satisfy a condition precedent stated in the letter itself.

## The Breach of Contract Claim Fails for Lack of Consideration

The January 2, 2004 letter stating that URRC would pay Ramko for past services is on its face based upon past consideration. The letter itself recites that the consideration *was past work*, which is not valid consideration as a matter of law.

"The general rule in New York is that past consideration is not consideration, because the promise was not induced by the consideration." Arnone v. Deutsche Bank, AG, 2003 U.S. Dist. Lexis 7941 at *7-8 (S.D.N.Y. 2003). Past consideration, however, is valid in New York if there is a writing signed by the party to be bound. GOL § 5-1105. But for a party to recover pursuant to § 5-1105, "there must be a written unequivocal promise to pay a sum certain, which recites the past consideration and which is signed by the promisor." Arnone, 2003 U.S. Dist. Lexis at *9-10. The "past work" letter neither contains a sum certain nor recites the past consideration.

## The January 2, 2004 Letter Agreement Provided that any Compensation Was Conditioned Upon a Closing of Private Placement Funds

URRC's obligation to provide Ramko with compensation for past work rendered did not arise unless and until a private placement closing occurred. As stated, the January 2, 2004 letter upon which Ramko relies expressly states the parties agreed that, in consideration of past work, URRC shall issue "a 10 year warrant to purchase up to 4,000 shares (post private placement closing) of the Company's common stock ..." (Answer, Ex. A, January 2, 2004 letter at 1). By Ramko's own admission, no such private placement closing ever occurred as structured or contemplated under the January 2004 agreement. (Answer, ¶ 8). Thus, no obligation to pay for past services ever arose. See, e.g., 120 Greenwich Development Associates, LLC v. Reliance Ins. Co., 2004 WL 1277998 at *11 (S.D.N.Y. 2004) (a "condition precedent is 'an act or event,

other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'").

## The Existence of a Contract Precludes Quasi-Contract Claims

Ramko cannot recover under its other theories pleaded for past work. "New York law does not permit recovery in *quantum meruit* where an express agreement covers the same subject matter involved." Kreiss v. McCown De Leeuw & Co., 131 F.Supp.2d 428, 437 (S.D.N.Y. 2001). "[C]laims for unjust enrichment or *quantum meruit* . . . are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997). See also Textiles Network Ltd. v. DMC Enterprises, LLC, 2007 U.S. Dist. Lexis 64247 at *14 (S.D.N.Y. 2007) (promissory estoppel claim dismissed in light of existence of written agreement governing same subject matter); City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 48 (1988). As the January 2, 2004 letter agreement addresses the pre-2004 services and payment therefore, the quasi-contract claims fail, *inter alia,* due to Ramko's failure to satisfy a condition precedent.

In addition, the allegations under the fourth count for promissory estoppel do not save the past work "agreement's" enforcement. To state a claim for promissory estoppel, a party must show "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." Reprosystem, B.V. v. SCM Corp., 727 F.2d 257, 264 (2d Cir. 1984) (quoting Ripple's of Clearview, Inc. v. LeHavre Assocs., 88 A.D.2d 120, 122, 452 N.Y.S.2d 447, 449 (2d Dep't 1982)). Reasonable reliance will not be found where, as here, the alleged obligations of the parties are contingent upon the occurrence of an event. Reprosystem, B.V., 727 F.2d at 265.

## IV.

## RAMKO'S CLAIMS BASED UPON AN ORAL AGREEMENT FOR ADDITIONAL INVESTMENT BANKING SERVICES ARE BARRED

The third agreement encompassed throughout Ramko's counterclaims is that Ramko "performed additional services for URRC after the past work Agreement" that are not covered by the May 2005 Consulting Agreement. (Answer, ¶ 36). Ramko alleges that it assisted URRC in negotiating a corporate acquisition of a company called DMS for which Ramko should be paid "fairly." (Id., ¶¶ 36, 53).

### The Statute of Frauds Bars Enforcement of any Alleged Oral Agreement and Quasi-Contract Claims

Ramko alleges that it provided negotiating services pursuant to an oral agreement under which URRC allegedly agreed to pay Ramko "fairly."[4] (Answer, ¶¶ 36, 52). As set forth in section II above, an oral agreement to pay compensation for services rendered in negotiating the purchase of a business falls squarely under GOL § 5-701(a)(10).

In addition, Ramko's promissory estoppel, *quantum meruit* and unjust enrichment claims related to its alleged investment banking services fail under the Statute of Frauds and must be dismissed. See Section II, supra.

### The Alleged Oral Agreement for Investment Banking Services is Void for Vagueness

Ramko's counterclaim does not allege any of the material terms of the alleged oral agreement to provide investment banking services, such as how much Ramko would be paid, when it would be paid, or even what investment banking services were in fact provided.

---

[4]    The parties contemplated entering into an Investment Banking Engagement Agreement dated January 10, 2005 but it was never signed. Ramko does not base any claims on that unsigned draft of a proposed agreement.

"A contract must be definite in its material terms in order to be enforceable." <u>Kosower v. Gutowitz</u>, 2001 WL 148840 at *5 (S.D.N.Y. 2001). Under New York law, "definiteness as to material matters is of the very essence in contract law. Impenetrable vagueness and uncertainty will not do." <u>Id.</u> (quoting <u>Martin Delicatessen, Inc. v. Schumacher</u>, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 249 (1981)). Thus, "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." <u>Martin Delicatessen, Inc.</u>, 52 N.Y.2d at 109, 436 N.Y.S.2d at 249.

Ramko's counterclaims do not allege any of the material terms of the alleged oral agreement to provide investment banking services. The allegation that compensation would be paid "fairly" is tantamount to an agreement to agree. This is too vague for a court to enforce. <u>See e.g.</u>, <u>Freedman v. Pearlman</u>, 271 A.D.2d 301, 303, 706 N.Y.S.2d 405, 407-08 (1st Dep't 2000), <u>reargument granted by, modified by</u> 200 N.Y. App. Div. Lexis 10270 (1st Dep't 2000) (alleged promises to provide "fair compensation" were "too indefinite to be enforced"); <u>Bergin v. Century 21 Real Estate Corp.</u>, 234 F.3d 1261 (2d Cir. 2000) (the "measure of compensation" is an essential term).

<u>V.</u>

**THE MAY 2005 CONSULTING AGREEMENT<br>SUPERSEDED ALL PAST AGREEMENTS**

Ramko alleges in the counterclaims that it continued to provide services to URRC in 2005 "and thereafter [because] as of June 2005 the parties finally entered into a separate consulting agreement providing that Ramko would be paid, beginning in June 2005, a monthly fee in respect of CFO-type services to be provided from June 2005 forward." (Answer, ¶ 52). It is undisputed that URRC paid Ramko $8,500.00 for two years. (<u>Id.</u>, ¶ 12, Complaint, ¶ 11).

That Consulting Agreement, prepared by Ramko, further demonstrates that its claims should be dismissed.

As set forth above (see pp. 10-11 supra), the May 2005 Consulting Agreement was intended to supersede all past agreements and to prevent introduction of parol evidence from contradicting its terms. "[I]t is generally understood that the purpose of an integration clause 'is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing.'" Holloway v. King, 161 Fed. Appx. 122, 124 (2d Cir. 2005).

Section 14 of the May 2005 Consulting Agreement provides that the Consulting Agreement "constitutes the entire understanding between the parties with respect to the subject matter hereof and supersedes all negotiations, prior discussions, and preliminary agreements made prior to the date hereof." (Fellner Decl., Ex. 5 at 5). Section 8(b) of the May 2005 Consulting Agreement further states that any other agreement outside the scope of the services to be performed and requested by URRC would be set forth in a separate agreement mutually agreed to. (Id. at 4). The absence of any such signed agreement, letter, or memorandum to support Ramko's counterclaims requires their dismissal. Ramko does not dispute the enforceability of the May 2005 Consulting Agreement, especially since it was well paid under it, but alleges that the investment banking services for which it seeks "fair" damages were "excepted" from it. (Answer, ¶ 52).

Therefore, the "break-up fee" and claim for past work were plainly superseded by the signed May 2005 Consulting Agreement. And claims for investment banking services, which were carved out, are likewise barred, not because the agreement's $8,500 payment included such services, but because the parties intended to memorialize any such separate agreement in writing on terms "mutually agreeable." It is undisputed that no agreement exists.

**VI.**

**RAMKO'S FRAUD CLAIM SHOULD BE DISMISSED**

Lastly, Ramko alleges that URRC and Mr. Gutierrez committed fraud against Founders by representing that the terms of a July 15, 2005 Letter of Intent between URRC and Founders were acceptable "when in fact the intent of URRC and Gutierrez was never to proceed with a transaction on that basis." (Answer, ¶ 73). Ramko asserts that the alleged fraud committed upon Founders "was also a fraud upon Ramko" because Ramko invested time and effort in the proposed transaction in reliance upon URRC and Mr. Gutierrez's proceeding with the transaction. (Id., ¶ 74). Ramko further alleges fraud because of URRC's and Mr. Gutierrez's alleged oral agreement that URRC would pay Ramko a fee of $375,000.00 plus 1.5% of URRC's equity on a pre-closing basis for work that Ramko would perform in connection with a potential deal between URRC and NTR. Ramko alleges, on information and belief, that Mr. Gutierrez did not intend to pay Ramko when he made this alleged agreement (which is barred by the Statute of Frauds). (Answer, ¶¶ 76-78).

Ramko's fraud claim initially fails because it does not plead fraud with specificity as required by Fed. R. Civ. Proc. 9(b). It simply references the alleged fraud committed upon Founders and attaches Founders' complaint to the pleading (Ex. C to Answer). As to the "separate fraud" pertaining to URRC's alleged promise to pay Ramko for investment banking services related to a possible transaction with others, Ramko omits key details, such as dates of alleged misrepresentations, location of the alleged misrepresentations, and other salient facts that are needed to plead fraud.

**A Contract Claim Dressed up as a Fraud Claim is Insufficient**

Ramko's fraud claim alleges that URRC and Mr. Gutierrez promised to pay Ramko a fee in connection with its services related to a potential deal between URRC and NTR but that Mr.

Gutierrez, at the time of the purported agreement, never intended to pay Ramko for its services. (Answer, ¶¶ 77-78). "New York law makes clear that a plaintiff may not circumvent the Statute of Frauds by 'simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder . . . .'" Zeising v. Kelly, 152 F.Supp.2d at 346 (citations omitted). See also GSGSB, Inc. v. New York Yankees, 862 F.Supp. 1160, 1177 (S.D.N.Y. 1994) ("a contract action may not be converted into one for fraud by the mere additional allegation that the contracting party did not intend to meet his contractual obligation.")

Alleging that Mr. Gutierrez had no intention of compensating Ramko for its services at the time of the alleged agreement is nothing more than an insufficient attempt to pass off a breach of contract claim as a fraud claim.

### Damages are Limited to Out-of-Pocket Losses

Ramko's fraud claim seeks recovery of the "break-up fee," "reputational damage," and compensation for services it allegedly provided to URRC "in connection with URRC's and Gutierrez's pursuit of an alternative deal with NTR and/or Coke." (Answer, ¶¶ 74, 76). However, the fraud claim fails yet again because any award of damages for fraud is limited in New York to "the actual pecuniary loss suffered as a result of the fraud." Spanierman Gallery Profit Sharing Plan v. Arnold, 1997 WL 139522 at *2 (S.D.N.Y. 1997).

In Lama Holding Corp. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996), the New York Court of Appeals re-affirmed the principle that "damages are to be calculated to compensate plaintiffs for what they lost because of fraud, not to compensate them for what they might have gained." See also Vox Advertising and Design, Inc. v. Makela, 2000 WL 1708181 at *2 (S.D.N.Y. 2000) ("money not gained, including profits that would have been earned absent any fraud, are not recoverable.").

Ramko's fraud claim seeking monies it would have earned but for URRC and Mr. Gutierrez's alleged fraud fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff United Resource Recovery Corporation and Third-party Defendant Carlos Gutierrez's motion for judgment on the pleadings should be granted with prejudice.

Dated:  New York, New York
       January 28, 2008

**PORZIO, BROMBERG & NEWMAN, P.C.**

By:_____
      Gary M. Fellner (GF-7486)

*Attorneys for Plaintiff and Third-Party Defendant*
*United Resource Recovery Corporation and Carlos*
*Gutierrez*
156 West 56th Street
Suite 803
New York, New York 10019-3800
(212) 265-6888

Gary M. Fellner (gmfellner@pbnlaw.com)
*On the Brief:*  Damian Christian Shammas (dcshammas@pbnlaw.com)