UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED RESOURCE RECOVERY CORPORATION,<br><br>     Plaintiff,<br><br> -against-<br><br><br>RAMKO VENTURE MANAGEMENT, INC. and JOHN KOHUT,<br><br>     Defendants.<br>_____<br>RAMKO VENTURE MANAGEMENT, INC.,<br><br>     Third-Party Plaintiff,<br><br> -against-<br><br><br>CARLOS GUTIERREZ,<br><br>     Third-Party Defendant. | Civil Action No. 07-9452 (RWS) |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF AND THIRD-PARTY DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY COMPLAINT PURSUANT TO FED. R. CIV. PRO 12(c)**

---

              **PORZIO, BROMBERG & NEWMAN, P.C.**
              156 West 56th Street
              Suite 803
              New York, New York 10019-3800
              (212) 265-6888

              *Attorneys for Plaintiff United Resource Recovery Corporation and Third-Party Defendant Carlos Gutierrez*

1190699

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| I. THE CLAIMS FOR A BREAK-UP FEE SHOULD BE DISMISSED | 1 |
|     Part Performance Does Not Apply to GOL § 5-701(a)(10) | 2 |
|     The Alleged Extent of the Parties' Relationship Does Not Enable Ramko to Circumvent the Statute of Frauds | 2 |
|     Ramko's Reliance on Alleged "Multiple, Related Documents" Cannot Circumvent the Statute of Frauds | 3 |
|     The January 2004 Agreement did not Address a Fee to Ramko for the Subsequent Proposed Founders Merger or the Coke Financing | 3 |
| II. THE "PAST-WORK AGREEMENT" CLAIMS ARE BARRED | 8 |
| III. ALL CLAIMS CONCERNING THE INVESTMENT SERVICES AGREEMENT ARE BARRED | 9 |
| CONCLUSION | 10 |

# **TABLE OF AUTHORITIES**

## **CASES**

Page(s)

Belotz v. Jefferies & Co., Inc., 213 F.3d 625 (2d Cir. 2000)..................................................2

Glassalum Intern. Corp. v. Albany Ins. Co., 2005 WL. 1214333 (S.D.N.Y. 2005).........7

Haines v. City of New York, 396 N.Y.S.2d 155 (1977)..........................................................6

Nemelka v. Questor Management Co. LLC, 40 A.D.3d 505, 836 N.Y.S.2d 598 (1st Dept 2007)..........................................................................................................................2

Riley v. N.F.S. Services, Inc., 891 F. Supp. 972 (S.D.N.Y. 1995).....................................2

Royal Air Maroc v. Servair, Inc., 603 F. Supp. 836 (S.D.N.Y. 1985)................................3

Sea Trade Co. Ltd. v. FleetBoston Financial Corp., 2004 WL. 2029399 (S.D.N.Y. 2004) ............2

Seneca Ins. Co. v. Morelli, 1996 WL. 312230 (S.D.N.Y. 1996)..........................................2

Southern Indus. of Clover, Ltd. v. Zenev Textiles, S.A., 2004 WL. 193176 (S.D.N.Y. 2004)..................................................................................................................7

## **STATUTES**

GOL § 5-701(a)(10)................................................................................................................2, 9

## **RULES**

Federal R. Civ. Proc. 12(c) ........................................................................................................1

**Preliminary Statement**

URRC and Carlos Gutierrez have moved to dismiss Ramko's counterclaims and third-party complaint under Fed. R. Civ. Proc. 12(c) based upon the pleadings and contracts annexed thereto. Since the pleadings were filed in early 2007, URRC has produced over 20,000 documents. Ramko is unable to refer to any additional document to support any of its counterclaims. The question, then, is how much more litigation must the movants endure when the counterclaims are groundless as a matter of law and, despite the extensive discovery exchanged to date, Ramko now back-peddles from its theories and scrambles to seek refuge under the all-too-familiar plea that more discovery is needed.

**I.**

**THE CLAIMS FOR A BREAK-UP FEE SHOULD BE DISMISSED**

Ramko's main claim against URRC is for a "break-up" fee based upon financing extended from the Coca-Cola Corporation ("Coke") in mid-2007. The December 2004 oral agreement alleged to have been made between Ramko and URRC has been shown to be unenforceable under the Statute of Frauds. (URRC's Opening Mem. at 13-14). Ramko, nonetheless, argues in opposition that part performance takes the December 2004 oral agreement out of the Statute of Frauds; the parties' relationship was "so extensive" that an exception to the Statute of Frauds should be found to exist; or alternatively, the prior January 2004 agreement in which $8 million was to be raised by mid-2004 (which never occurred) should control.[1]

---

[1] URRC has not filed a motion to dismiss because it cannot discern the nature of the claims. Rather, the motion was filed because Ramko's theories are invalid under New York law. For this reason, Ramko's reliance on notice pleading concepts is misplaced. (Ramko's Mem. in Opp. ["Ramko Mem.] at 12-13).

1190699

### Part Performance Does Not Apply to GOL § 5-701(a)(10)

Ramko incorrectly argues that part performance is an exception to the Statute of Frauds. (Ramko Mem. at 17). The doctrine of part performance, however, is not an exception to the specific subsection of the General Obligations Law at issue. See Belotz v. Jefferies & Co., Inc., 213 F.3d 625, 627 (2d Cir. 2000) ("Section 5-701(a)(10) does not expressly provide a part performance exception, and the New York Court of Appeals has firmly stated that there is no such exception."); Sea Trade Co. Ltd. v. FleetBoston Financial Corp., 2004 WL 2029399 at *4-5 (S.D.N.Y. 2004); Nemelka v. Questor Management Co. LLC, 40 A.D.3d 505, 506, 836 N.Y.S.2d 598, 599 (1st Dept. 2007).

### The Alleged Extent of the Parties' Relationship Does Not Enable Ramko to Circumvent the Statute of Frauds

Ramko argues that its relationship with URRC was "so extensive" that the Statute of Frauds' writing requirement can be overlooked. (Ramko Mem. at 18-19). There is no such exception to the Statute of Frauds. In each of the cases upon which Ramko relies for its proposition, the Court found that GOL § 5-701(a)(10) did not apply because the relationship at issue went well beyond the plaintiff's services to help buy or sell a business. For example, in Seneca Ins. Co. v. Morelli, 1996 WL 312230 (S.D.N.Y. 1996), the Court concluded that the plaintiff had sufficiently alleged facts to show that plaintiff "was an employee rendering services, not a finder or negotiator." Id. at *2. Similarly, in Riley v. N.F.S. Services, Inc., 891 F. Supp. 972 (S.D.N.Y. 1995), the Court held that plaintiff had been hired as an employee and the jury could find plaintiff's position "consisted of more than his functioning as an intermediary." Id. at 978. Here, by contrast, Ramko was never an URRC employee, and Ramko has not alleged as much. It was a finder of a business opportunity.

**Ramko's Reliance on Alleged "Multiple, Related Documents"**
**Cannot Circumvent the Statute of Frauds**

Ramko tries to circumvent the Statute of Frauds by relying upon "an integration of several documents" exception. Ramko primarily relies upon Royal Air Maroc v. Servair, Inc., 603 F. Supp. 836 (S.D.N.Y. 1985). There, this Court held that the Statute of Frauds did not invalidate an amendment to the parties' agreement, which was signed by only one of the parties, because an "integration of several documents" existed. The documents referred to the same subject matter of the parties' agreement, together contained all of the material terms of that agreement, and at least one of the documents had been signed or prepared by the party to be charged. Id. at 841. Here, URRC never signed any documents that referred to or contained the material terms of any alleged fee agreement as to who would pay Ramko a fee if Founders acquired control of URRC, or in what amount. Similarly, no agreement was ever reached as to a "break-up" fee if URRC refused an investment by Founders and then secured alternative funding separately.

**The January 2004 Agreement did not Address a Fee to Ramko for the Subsequent**
**Proposed Founders Deal or for the Coke Financing**

The signed agreement from January 2004 did not, as Ramko suggests in hindsight, apply to the subsequent Founders Letter of Intent. That prior agreement pertained to a different capital structure, a different amount, and a very different outcome for URRC and its shareholders. Nonetheless, Ramko backtracks from its initial allegations and now argues that it should be permitted to re-plead, hoping that the Court will accept its newfound theory that the January 2004 agreement may be resuscitated and apply to the events that unfolded two to three years after its execution. Leave to re-plead should be denied for several reasons.

First, Ramko never secured funding as outlined in the January 2004 agreement. By Ramko's own admission, Founders, more than a year later, rejected it. (See URRC's Opening Mem. at 14, n. 3). In fact, the Founders investment structure wrested control of URRC from its existing shareholders. The January 2004 agreement, by contrast, never addressed or contemplated a loss of control. Raising money to bring in a passive minority investor seeking a return on its money is a horse of another hue from a private equity firm gobbling up the majority of stock and thereby transforming the current owners into minority participants.

To now try to bridge the failed Founders investment to the January 2004 agreement, Ramko asserts that the counterclaim contains the allegation that URRC had contemplated *two* traunches of investments of $8 million over time, and that Founders was ready to proceed with one investment of $15 million right away. (Ramko Mem. at 14). According to Ramko, the capital infusion had not changed, but merely the timing, as it would be done in a "single round." (Id.). This is completely belied by the documents attached to Ramko's pleading. Indeed, the January 2004 agreement signed by URRC nowhere addressed any fee to Ramko for anything other than Ramko's possible raise of an initial $8 million -- an infusion that was projected to close by mid-2004 and would only have given an investor a 40% minority interest in URRC. (URRC's Opening Mem. at 6). While Ramko now states that URRC was contemplating a later capital raise sometime in the future were Ramko successful in securing the initial $8 million (Ramko Mem. at 14), nothing contained *in any fee agreement* signed by URRC refers to a fee to Ramko for closing on a capital raise over $8 million. Significantly, nothing URRC ever signed addressed a fee to Ramko that would oust URRC's owners from control.

The 2003 business plan that Ramko prepared and now submits to the Court does not save its claim. (Kohut Aff., Ex. B). The Plan shows that URRC was uncertain in 2003 of the source

1190699                                    4

of additional funding over and above the initial $8 million Ramko might raise, but that an independent source was considered. (Id. at 7 ["at this time [URRC] cannot predict what amount of necessary funding will be available ... although one of the largest participants in used PET has expressed an interest"]). Moreover, the Plan nowhere reflects whether a future investment would take the form of equity or debt, a critical distinction having huge ramifications to URRC's shareholders. And to the extent Ramko contemplated a future equity investment as suggested in its financial projection now submitted in opposition, a later investment would not have diluted the majority shareholders' interest by more than 15%, meaning they would still own 51% of the shares even assuming the first investment generated a full 40% sale of the stock. (Kohut Aff., Ex. A).

Regardless of whether additional funding was a future possibility, the pleadings and documents upon which Ramko relies demonstrate that URRC never reached a fee agreement with Ramko for bringing any monies to the table beyond $8 million. Had there been a fee agreement beyond that, Ramko could have easily written as much into its January agreement.

Ramko also relies upon an April 20, 2005 letter from Mr. Gutierrez to Founders in which he asked whether $375,000 was "part of John's fee?" (Ramko Mem. at 14; Kohut Aff. ¶ 8, Ex. C). This merely confirms that some fee was contemplated if and when the Founders acquisition closed. It does not reflect a fee agreement that URRC had with Ramko, what the fee would be, how or when it would be paid, or, most importantly, who would pay it. Indeed, the proposed December 2004 agreements that Ramko had prepared were never signed *because* there was never any agreement reached as to what fee Ramko might receive if the Founders deal closed.

URRC's logical understanding was that if Founders became the new majority owner in URRC, Founders, not URRC, should fund any fee to Ramko.[2]

All of URRC's obligations to Ramko were memorialized when the parties signed a Consulting Agreement in May 2005 for all services, excluding only future "investment-banking" services. In January 2004, Ramko was not receiving any fees from URRC. Yet, from May 2005 onward, URRC paid Ramko $8,500 monthly. As such, URRC all the more perceived any obligation to Ramko in excess of $8,500 each month would be absorbed by Founders if and when the acquisition closed.

The May 2005 Consulting Agreement's integration clause also renders Ramko's arguments invalid, as it states that it supersedes "all" negotiations, prior discussions, and preliminary agreements. Respectfully, there is nothing ambiguous about the term "all."[3]

Ramko's arguments also fail because the January 2004 agreement lapsed after a reasonable period. Haines v. City of New York, 396 N.Y.S.2d 155, 157 (1977) ("where the parties have not clearly expressed the duration of a contract, the courts will imply that they

---

[2] Ramko also incorrectly relies upon a portion of a draft acquisition agreement exchanged between URRC and Founders. (Ramko Mem. at 7, referring to Ex. D to the Kohut Aff.). That draft page, however, belies Ramko's arguments. In § 3.21, the draft stated URRC's understanding that, while Ramko acted as a broker, finder or financial advisor for URRC, "*no person* is entitled to any fee, commission or like payment from the Company ..."

[3] Ramko argues that the May 2005 Consulting Agreement's integration clause is somehow limited because it states that it "constitutes the entire agreement between the parties with respect to the *subject matter* hereof." (Ramko Mem. at 21). Ramko ignores that URRC fully recognizes that the May 2005 agreement's "subject matter" was not inclusive of all dealings, as it did not extend to investment banking services post-2005. But it did embrace everything else. For that reason, the integration clause expressly states that it supersedes all *past* agreements and discussions. If the January 2004 "past services" agreement and "break-up fee" *were* excepted from the integration clause, as Ramko argues, it could have easily stated as much in the May 2005 Consulting Agreement.

intended performance to continue for a reasonable time."). Here, the projected closing for funding under the January 2004 agreement was June 30, 2004, and Ramko was granted a 180-day exclusivity period. (Opening Decl. in Support, ¶5, Ex. 2, Amended Ex. A, January 2004 Summary of Terms at 6). It is submitted that six to nine months was reasonable for Ramko to perform under the January 2004 agreement.

The parties' course of dealing is also relevant, i.e., repeatedly signing new contracts as new ventures surfaced and the closing or exclusivity period lapsed, in showing that they did not intend to have the January 2004 agreement continue indefinitely through 2006 when Founders collapsed or through mid-2007 when Coke financing was extended. See e.g., Glassalum Intern. Corp. v. Albany Ins. Co., 2005 WL 1214333 at *7 (S.D.N.Y. 2005)(in determining the parties' intent, the court should look to, among other things, the parties' course of dealing); Southern Indus. of Clover, Ltd. v. Zenev Textiles, S.A., 2004 WL 193176 at *4 (S.D.N.Y. 2004) ("The most persuasive evidence of the parties' intent is the parties' course of dealings."). In fact, Ramko's conduct in late 2005 explicitly shows that it knew the January 2004 agreement had lapsed. In an attempt to extract more fees from URRC beyond the $8,500 monthly payment as a consultant, Ramko asked URRC in November 2005 to backdate the December 2004 proposed agreements. (Reply Declaration of Gary M. Fellner, Esq. ("Reply Fellner Dec." ¶ 3, Ex. A), saying "I would suggest you sign them dated in late 04 (but it's up to you.)" (Id.).

Accordingly, Ramko acknowledged that the January 2004 agreement lapsed and sent URRC a completely new set of agreements in December 2004 *proposing* to embrace a new fee arrangement after Founders surfaced as a possible investor. This new set of agreements was sent because Ramko recognized that the new investment scenario was not embraced under the older January 2004 agreement. If the January 2004 agreement did cover Founders' merger (or any

post-Founders break-up fee in 2007), as Ramko now argues, there would have been no need for Ramko to send URRC a new set of agreements.

Finally, any "break-up" fee under the January 2004 agreement only applied to "alternative" funding, i.e., similar funding provided by another. (URRC's Opening Mem. at 7). Ramko never secured any financing under the January 2004 agreement. Even if it had done so, the Coke financing in mid-2007 did not resemble the Founders investment. The Founders purchase envisioned a majority acquisition of URRC's stock. URRC is a corporation involved in plastic recycling operations and a far larger silver extraction operation. The existing shareholders' interests in the corporation would have been marginalized under the Founders scenario. By contrast, the Coke funding in mid-2007 involved a capital investment in a joint venture with a URRC subsidiary directed towards expanding URRC's segmented plastic recycling operations only. The shareholder group's ownership interest remains fully intact. In short, Ramko has not, and cannot, allege that the Coke financing is "alternative" financing.

## II.

### THE "PAST-WORK AGREEMENT" CLAIMS ARE BARRED

Ramko concedes that a fee for "past work" was conditioned upon it securing $8 million of financing for URRC, and any obligation would become payable "post-closing." No closing occurred. Nonetheless, Ramko erroneously argues that the "past work" agreement for pre-2004 services is valid because the January 2004 side letter only "reflects" the agreement. (Ramko Mem. at 19). Ramko cannot overcome the defects addressed in URRC's opening memorandum concerning lack of consideration (URRC's Opening Mem. at 17) given for the so-called agreement, and the fact that the May 2005 Consulting Agreement's integration clause bars such a claim as a matter of law. (Id. at 20).

Alternatively, Ramko argues that it is entitled to relief under *quantum meruit* and unjust enrichment theories because no agreement was ever reached. (Ramko Mem. at 19). Yet, the written instrument signed by the parties defeats the claims for quasi-contract relief. (URRC's Opening Mem. at 18). Once again, Ramko is back peddling by arguing that the claim for a contract breach was really never a contract claim at all, because the written contract did not "govern." (Id.) Yet, Ramko attached the January "agreements" as Ex. A to its Counterclaims and is plainly relying upon such "agreement." Thus, the past work agreement was, at minimum, evidenced by the side January 2004 letter agreement, and that agreement expressly stated that compensation to Ramko was conditioned on URRC receiving financing from Ramko.

### III.

### ALL CLAIMS CONCERNING THE INVESTMENT SERVICES AGREEMENT ARE BARRED

The third agreement alleged, based upon an oral agreement to compensate Ramko for "investment banking services" pertaining to alleged assistance when URRC acquired DMS in 2005, also fails. URRC has acknowledged that the "investment services" were carved out of the May 2005 Consulting Agreement. But the undisputed fact remains that the "investment banking services" claim addresses services allegedly rendered in negotiating the purchase of a business entity. Any so-called oral agreement to pay Ramko "fairly" for such services is unenforceable both because it is unduly vague and because it is barred by GOL § 5-701(a)(10). (URRC's Opening Mem. at 19).

Ramko argues in opposition that it should be given leave to take discovery to document the alleged oral agreement. (Ramko Mem. at 22). URRC has produced all of its records in this suit. Nobody else would have a signed writing from URRC to evidence any alleged oral

agreement. The best Ramko can do is assert that an investment banking agreement was prepared, but the parties "never quite got around to signing it." (Id. at 23, Ex. G). This does not satisfy the Statute of Frauds. Further, even if the Statute of Frauds could be brushed aside, the alleged oral agreement to pay Ramko "fairly" is too vague to be enforceable, a point that Ramko does not attempt to refute.

In an effort to appeal to the Court's sense of equity, Ramko asserts that an "enormous" benefit has been conferred upon URRC. (Ramko Mem. at 22-24). The only thing the pleadings demonstrate is that in 2005, Ramko assisted in the acquisition of DMS. During that entire period, Ramko was paid $8,500 monthly. Receiving over one hundred thousand dollars annually for two years for assisting URRC with only one transaction hardly evokes any sense of inequity.

## CONCLUSION

For the foregoing reasons, as well as those set forth in their initial memorandum of law, Plaintiff United Resource Recovery Corporation and Third-party Defendant Carlos Gutierrez's motion for judgment on the pleadings should be granted with prejudice.

Dated: New York, New York
March 31, 2008

PORZIO, BROMBERG & NEWMAN, P.C.

By: _____
Gary M. Fellner (GF-7486)

*Attorneys for Plaintiff and Third-Party Defendant*
United Resource Recovery Corporation and Carlos Gutierrez
156 West 56th Street
Suite 803
New York, New York 10019-3800
(212) 265-6888

Gary M. Fellner (gmfellner@pbnlaw.com)
*On the Brief:* Damian Christian Shammas (dcshammas@pbnlaw.com)