UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
UNITED RESOURCE RECOVERY CORP.,

               Plaintiff,                07 Civ. 9452

     -against-                       OPINION

RAMKO VENTURE MANAGEMENT, INC. and
JOHN KOHUT,

               Defendants.
------------------------------------X
RAMKO VENTURE MANAGEMENT, INC.,

             Third-Party Plaintiff,

     -against-

CARLOS GUTIERREZ,

             Third-Party Defendant.
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 02 28 08

A P P E A R A N C E S:

       Attorneys for Plaintiff
       United Resource Recovery Corporation and
       Third-Party Defendant Carlos Gutierrez

       PORZIO, BROMBERG & NEWMAN, P.C.
       156 West 56th Street, Suite 803
       New York, NY 10019-3800
       By: Gary M. Fellner, Esq.

       Attorneys for Defendants

       LLOYD S. CLAREMAN, ESQ.
       121 East 61st Street
       New York, NY 10065

**Sweet, D.J.**

Plaintiff United Resource Recovery Corporation
("Plaintiff" or "URRC") has moved pursuant to Rule 12(c), Fed.
R. Civ. P. to dismiss the answer and counterclaims of Defendant
Ramko Venture Management Inc. ("Ramko"). Upon the conclusions
set forth below, the motion is granted in part and denied in
part.

This dispute has arisen between URRC, a start-up
company, and John Kohut ("Kohut" and collectively with Ramko,
"Defendants") and his company Ramko, over Defendants' asserted
right to compensation for financial services allegedly performed
by Defendants, including efforts to obtain financing for URRC.

## I.    PRIOR PROCEEDINGS

On February 20, 2007, URRC filed a Complaint against
Ramko and Kohut in the United States District Court for the
District of South Carolina seeking a declaration that the
Defendants are not entitled to fees, expenses or other
compensation beyond consulting fees of $8,500 per month,
beginning in 2005, consistent with a written agreement between
the parties.   Complaint ¶¶ 14, 17.

1

On April 4, 2007, Defendants filed an Answer and
Counterclaim and Third-Party Complaint ("Answer") against URRC
and its principal, Carlos Gutierrez ("Third-Party Defendant" or
"Gutierrez").

Ramko moved to transfer the action to the Southern
District of New York which motion was granted by an Order dated
October 15, 2007.

The instant motion was heard and marked fully
submitted on April 16, 2008.

## II. DEFENDANTS' ALLEGATIONS

The Answer contains four defenses that deny certain of
the allegations of the Complaint and allege Defendants' version
of the events that took place, Answer ¶¶ 1-24, and then engages
in a lengthy exposition of the background of the controversy.
Id. ¶¶ 32-53.

Defendant Ramko also asserts five counterclaims: (1)
breach of contract, id. ¶¶ 54-59; (2) unjust enrichment, id. ¶¶
60-64; (3) quantum meruit, id. ¶¶ 65-67; (4) promissory

estoppel, id. ¶¶ 68-71; and (5) fraud. Id. ¶¶ 72-80. All five claims are asserted against URRC; only the last two are asserted against Gutierrez.

The Answer is not a model of clarity. It is largely based on two agreements dated January 2, 2004, relating to financing services proposed by the Defendants: the "Break-up Agreement" and the "Past Work Agreement," another January 2004 agreement outlining a potential private placement which is titled the "Summary of Terms," and unexecuted revisions of those agreements dated December 10, 2004. The counterclaims also rely on alleged oral representations by Gutierrez.

Defendants allege that URRC and Ramko began their relationship in or around 2001 pursuant to a written agreement dated August 17, 2001. Answer ¶ 33. URRC had developed a "proprietary 'bottle-to-bottle' waste-recycling technology 'capable of extracting reusable new material from used plastic bottles'" and was running a silver recycling business. Id. Ramko was engaged to provide assorted consulting and financial services on a day-to-day basis to URRC (i.e. to help in accounting matters, provide long-range financial guidance), and to provide investment banking services "of different sorts at different times." Id. Among these services, Ramko was hired to

try to arrange a private placement of $7.2 million to raise capital for URRC. Id. ¶ 6. No such placement occurred, and the 2001 agreement was superseded by a subsequent written fee agreement reached in 2002. Id. Similar equity capital was again sought in 2002 by way of private placement, but again Ramko was unsuccessful and earned no fee, and the 2002 agreement was superseded by a subsequent agreement. Id. ¶ 7.

> Between 2001 and 2003, Ramko performed

> extensive services of various types for URRC with the expectation of being paid, for which it received no compensation. These services included a broad array of financial consulting services , including services of the type that would normally be performed by an in-house CFO as well as those that would typically be within the expertise of an outside investment banker.

Id. ¶ 49. Gutierrez promised Kohut repeatedly that Ramko would be "taken care of" when URRC raised financing. Id.

In January 2004, the parties entered into an agreement set forth in three separate documents. Id. ¶ 38. One of those writings was a "Summary of Terms" outlining a private placement that Ramko was to try to secure on URRC's behalf. The agreement contemplated an $8 million private placement in exchange for a 40 percent interest in URRC. Id. ¶ 38, Am. Ex. A at 6. The Summary of Terms contained a 180-day exclusivity period and an

approximate closing date of June 30, 2004. Id., Am. Ex. A at
11. If it successfully obtained such funding, Ramko would be
entitled to a commission of ten percent of the capital raised
($800,000), a fixed expense allowance of three percent
($240,000), and certain warrants. Id., Am. Ex. A at 7.

A separate signed letter dated January 2, 2004,
provided for a "break-up fee" payable to Ramko under certain
conditions:

> [S]hould RamKo be in the position to close such
> transactions, on substantially the terms outlined
> [in the Summary of Terms], and if, for any reason
> [URRC] chooses to accept alternative funding or a
> strategic investment, RamKo shall be entitled to,
> as a break-up fee, compensation equal to its
> minimum fee ($300,000 plus warrants) less any
> amount contractually due and payable or paid
> under the enclosed Summary of Terms.

Id. ¶ 38, Am. Ex. A at 2.

Another letter, also dated January 2, 2004, the "Past

Work Agreement," stated, *inter alia*:

> RamKo and [URRC] have agreed that in consideration of
> past work on [URRC's] behalf, [URRC] shall issue to
> Ramko or its designee a 10 year warrant to purchase up
> to 4,000 shares (post private placement closing) of
> the Company's common stock exercisable, inclusive of a
> cashless exercise option, at $200 per share (based on
> the capital structure outlined in the Summary of
> Terms).

Id., Am. Ex. A at 4.

Ramko identified Founders Equity SBIC, LLP

("Founders") as a potential investor. Id. ¶ 39.

> Founders reviewed URRC's business plan and
> related underlying projection . . . which
> demonstrated a need over time for a total of $16
> million in new equity and advertised a
> willingness on the part of URRC to cede existing
> shareholder control in exchange for that level of
> capital. Founders noted that URRC's plan was to
> raise $8 million initially and then the second $8
> million later, but Founders came to the
> conclusion, towards the end of 2004, that it did
> not want to rely on the vagaries of URRC's
> ability to raise the second $8 million. Founders
> accordingly advised URRC in late 2004 that
> Founders would be willing to explore a
> transaction with URRC pursuant to which Founders
> would invest $15 million in exchange for
> immediate control of URRC, thereby obviating the
> need for a second round of financing later on.

Id.

URRC instructed Ramko to proceed with discussions with

Founders on this basis. Id. ¶ 40. Ramko then prepared and sent

URRC revisions of the January, 2004 papers: a new preliminary

Summary of Terms, a side letter dated December 10, 2004, and

another letter agreement dated December 10, 2004 (collectively,

the "December 2004 Revisions"). Id. ¶ 41, Ex. B.

According to the proposed Summary of Terms, Ramko

would try to arrange for up to $25 million in equity financing

in exchange for a controlling 62.5% interest in URRC. Id., Ex.
B at 6.

The proposed Summary of Terms contained a 180-day
exclusivity period and an approximate closing date of June 30,
2005. Id., Ex. B at 11.

A separate letter dated December 10, 2004,
accompanying the Summary of Terms again provided for a "break-up
fee" of $300,000 plus warrants in URRC if Ramko secured funding
"on substantially the terms outlined" in the new proposed
Summary of Terms and URRC accepted alternative funding. Id. ¶
46, Ex. B at 2.

None of the December 2004 Revisions were ever signed.
Id. ¶ 41, Ex. B. However, Defendants assert that Gutierrez told
Kohut that the December 10, 2004 Unsigned Revisions in fact
represented URRC's agreement with Ramko, and that he was willing
to sign them. Id. However, Kohut and Gutierrez agreed that
there was no need to actually sign the documentation at that
time. Id. Ramko contends that these three documents

represent the parties' oral agreement regarding
the revised terms of Ramko's compensation within
the context of the larger, $15 million deal that
was now, as of later 2004, being discussed; and

these remained the agreed-upon terms of Ramko's
compensation going forward.

Id.

Ramko asserts that it continued to provide "additional
services" to URRC, "similar in scope to its prior services, for
the remainder of 2004 and the first five months of 2005, for
which Ramko has received no compensation." Id. ¶ 51.

URRC and Founders entered into a non-binding Letter of
Intent ("LOI") on July 15, 2005, "pursuant to which Founders
would invest $15 million in exchange for 62.5% of URRC's
equity." Id. ¶ 42, Ex. C at 23. The deal never went through.
Founders later sued URRC and Gutierrez, and the suit settled.
Id. ¶ 43.

Founders was "ready, willing and able to close on the
transaction contemplated by the July 15, 2005 Letter of Intent."
Id. URRC "reneged on" the Founders deal in October 2006 so that
it could pursue "superior alternatives, namely potential deals
with a company called NTR, and/or a potential deal with The
Coca-Cola Company." Id. ¶¶ 43, 44. URRC is currently in
negotiations with NTR and Coke regarding alternative funding
and/or a strategic investment. Id. ¶ 45.

In the spring of 2005, the parties signed a

"Consulting Agreement," dated May 27, 2005, pursuant to which

Ramko was paid $8,500 per month for consulting services.

Fellner Decl., Ex. 5; Answer ¶¶ 10, 36, 52.  URRC paid Ramko

$8,500 per month through the date of filing under the Consulting

Agreement.  Complaint ¶ 11; Answer ¶ 12.  The Consulting

Agreement covered all consulting "services" Ramko could provide

for six and a quarter days each month that would be "reasonably

requested by . . . [URRC].  These services shall be . . . as a

consultant and advisor, such services to be substantially

similar to those performed by a principal financial officer."

Fellner Decl. Ex. 5 at 1.  The Consulting Agreement further

states that

> 8. Additional Services. . . .
> (b)  Any service, other than the Services,
> including but not limited to investment banking
> services performed by Consultant for the Company,
> are not covered by, nor subject to the terms and
> provisions of this Agreement, and compensation
> for and the conditions for the performance of
> such services are or shall be the subject of
> separate agreements mutually agreeable to the
> parties thereto.
>
> \*    \*    \*
>
> 14. Entire  Agreement.       This    Agreement
> constitutes the entire understanding between the
> parties with respect to the subject matter hereof
> and   supersedes    all    negotiations,   prior
> discussions,  and  preliminary  agreements   made
> prior to the date hereof.  This agreement may be
> amended or replaced only in writing executed by
> all parties hereto.

Id., Ex. 5 at 5.

Ramko performed investment banking services for URRC in 2005, chiefly in connection with URRC's acquisition of a silver recycling business called DMS, for which no compensation has been paid. Id. ¶ 36.

## III. **THE 12(C) STANDARD**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard applicable to a motion under Fed. R. Civ. P. 12(b)(6). Patel v. Contemp. Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). All factual allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499,

510 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S.
Ct. 1955, 1969 (2007)). A complaint should not be dismissed on
a motion for judgment on the pleadings unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of
its claims that would entitle it to relief. Faconti v. Potter,
242 Fed. App'x 775, 777 (2d Cir. 2007).

## IV.  DISCUSSION

Ramko's overlapping counterclaims variously assert the
right to three categories of relief: (1) a break-up fee on the
Founders deal; (2) compensation for the work "reflected" in the
Past Work Agreement performed over a period of 2001 to May 2005;
and (3) compensation for investment banking services rendered in
2005.

### A.  Defendants' Counterclaim for Breach of
### Contract Is Dismissed In Part

Under New York law, the elements of a breach of
contract claim are (1) the existence of a contract; (2) adequate
performance of the contract by the plaintiff; (3) breach of
contract by the defendant; and (4) damages. See Eternity Global

Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004).

Defendants' first counterclaim in fact asserts two separate breach of contract claims: the first seeks to recover a "break-up fee," and the second seeks to recover compensation for pre-2005 services based on the Past Work Agreement or, alternatively, an oral contract based on representations by Gutierrez.

## 1. Ramko's Contract Claim for a Break-up Fee Is Dismissed

The Answer does not specify the contract under which Ramko asserts the right to recover a break-up fee. In its opposition to this motion, Ramko argues that there are two contracts under which it has this right: the January 2004 Break-up Agreement and the unsigned December 2004 revision of that agreement. See Def. Opp. at 14.

With regard to the January 2004 Break-up Agreement, the Complaint concedes that Ramko was only entitled to a break-up fee "if an investor were ready to close on a transaction as outlined in the 'Summary of Terms' but URRC, for any reason,

12

chose to accept alternative funding or an investment from some other source." Answer ¶ 38. The actual contract language reads: "[S]hould RamKo be in the position to close such transactions, on substantially the terms outlined, and if, for any reason, the Company chooses to accept alternative funding or a strategic investment, RamKo shall be entitled to, as a break-up fee, compensation . . . ." Id., Am. Ex. A at 2.

The January 2004 Summary of Terms contemplated an $8 million private placement in exchange for a 40 percent interest in URRC. Id., Am. Ex. A at 6. The Summary of Terms also contained a 180-day exclusivity period and an approximate closing date of June 30, 2004. Id., Am. Ex. A at 11. Ramko alleges that it identified Founders as a potential investor, but that Founders rejected the opportunity to invest $8 million, and instead proposed a transaction "pursuant to which Founders would invest $15 million in exchange for immediate control of URRC . . . ." Id. ¶ 39. This is the only opportunity that Ramko claims to have identified with regard to the Break-up Agreement.

As applied to this set of facts, the language of the Break-up Agreement is unambiguous. See Eternity Global, 375 F.3d at 178 ("A contract may be ambiguous when applied to one set of facts but not another . . . ." (quotation and alteration

13

omitted)). There is no legally permissible interpretation of
the Break-up Agreement that would deem the transaction proposed
by Founders, involving an investment of almost twice the value
contemplated by the Summary of Terms and transfer of a
controlling rather than a minority stake in URRC, to be "on
substantially the terms outlined" by the Summary of Terms.
Ramko is therefore not entitled to recover a break-up fee under
the Break-up Agreement.

Ramko argues that at the time the Break-up Agreement
was entered into, URRC contemplated raising a total of $16
million in two tranches of $8 million each, and that Ramko found
a party ready to provide not only the first $8 million, "but all
of URRC's equity needs in a single round." Def. Opp. at 14.
This argument relies on Kohut's testimony, certain URRC
financial documents and the URRC 2003 Business Plan. See id.
Under the parol evidence rule, "such extrinsic evidence may not
be used to modify, explain, vary or supplement the written
integrated contract." Gualandi v. Adams, 385 F.3d 236, 241 (2d
Cir. 2004); see also Lee v. BSB Greenwich Mortgage Ltd. P'ship,
267 F.3d 172, 178 (2d Cir. 2001) ("Where the language of the
contract is clear and unambiguous, the contract is to be given
effect according to its terms, and resort to parol evidence is
not only unnecessary but improper." (internal quotations,

citations and alterations omitted)); Red Ball Interior

Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999)

("If a contract is clear, courts must take care not to alter or

go beyond the express terms of the agreement, or to impose

obligations on the parties that are not mandated by the

unambiguous terms of the agreement itself."). Ramko's argument

flies in the face of the plain language of the Break-up

Agreement, and must therefore be rejected.

To the extent that Ramko's claim is premised on the

December 2004 Revisions, it is barred by the New York Statute of

Frauds, which states:

> a. Every agreement, promise or undertaking is
> void, unless it or some note or memorandum
> thereof be in writing, and subscribed by the
> party to be charged therewith, or by his lawful
> agent, if such agreement, promise or undertaking:
>
> 10. Is a contract to pay compensation for
> services rendered in negotiating a loan, or in
> negotiating the purchase, sale, exchange, renting
> or leasing of . . . a business opportunity,
> business . . . or an interest therein, including
> a majority of the voting stock interest in a
> corporation and including the creating of a
> partnership interest.
>
> "Negotiating" includes procuring an introduction
> to a party to the transaction or assisting in the
> negotiation or consummation of the transaction.
> This provision shall apply to a contract implied
> in fact or in law to pay reasonable compensation
> . . . .

N.Y. Gen. Oblig. Law § 5-701. The New York Court of Appeals has warned that "[t]oo broad an interpretation would extend the writing requirement to unintended situations. For instance, the typical stockbroker's dealings might be covered." Freedman v. Chem. Constr. Corp., 372 N.E.2d 12, 16 (N.Y. 1977). However,

[t]oo restrictive an interpretation would defeat the purpose of the legislation. Because in some circumstances the important services of an intermediary may be accomplished in the course of a few and even momentary conversations, false or exaggerated claims can be asserted easily and disproved only with difficulty. It is this type of situation to which the statute is addressed.

Id. See also Sugerman v. MCY Music World, Inc., 158 F. Supp. 2d 316, 322-23 (S.D.N.Y. 2001) ("New York is . . . interested in protecting against 'contract cases which all too often degenerate[] into swearing contests' and with the attendant risk of perjury.'" (alteration in original) (quoting Merex A.G. v. Fairchild Weston Sys., Inc., 810 F. Supp. 1356, 1366 (S.D.N.Y. 1993)).

Ramko does not dispute that the Statute of Fraud applies, but argues that in cases involving multiple, related documents, the Statute of Frauds does not require that every document be signed, citing Royal Air Maroc v. Servair, Inc., 603 F. Supp. 836, 841 (S.D.N.Y. 1985). The rule, as stated in Royal Air Maroc, is that "an integration of several documents

16

satisfies the writing requirement of the statute where they
refer to the same subject matter, together contain all the
material terms, and at least one of which is signed or prepared
by the party to be charged." Id. at 841. In Royal Air Maroc,
there were a number of signed documents that acknowledged
defendant's acquiescence to the terms of the alleged contract.
See id. ("[Counterclaim defendant's] telex of May 1984, its
letter dated May 23, 1984, and its cancelled checks in payment
of [Counterclaimant's] invoices for the 17-month period
subsequent to March 31, 1983 all are further signed documents
which acknowledge the continued existence of the terms of the
Agreement in addition to Amendment No. 1.").

In contrast, here, Ramko has pointed to no document
that "[was] signed with intent to authenticate the information
contained therein and that such information does evidence the
terms of the [alleged] contract." Ladenberg Thalmann & Co.,
Inc. v. Tim's Amusements, Inc., 712 N.Y.S.2d 526, 529 (App. Div.
2000) (quoting Crabtree v. Elizabeth Arden Sales Corp., 110
N.E.2d 551, 553 (N.Y. 1953)). Ramko seeks to rely upon an April
20, 2005 letter from Gutierrez to Founders in which he asked
whether $375,000 was "part of John's fee?" Def. Opp. 14.
Although this confirms that some fee was contemplated, it does
not refer to the December 2004 Revisions or reflect its terms,

17

nor does it indicate how, when or under what conditions a fee
would be paid, what the fee would be, or who would pay it.

Ramko also relies on the doctrine of part performance,
arguing its performance should take the December 2004 Revisions
out of the Statute of Frauds. The doctrine of part performance,
however, is not an exception to the subsection of the General
Obligations Law at issue. See Belotz v. Jefferies & Co., Inc.,
213 F.3d 625, 627 (2d Cir. 2000) ("Section 5-701(a)(10) does not
expressly provide a part performance exception, and the New York
Court of Appeals has firmly stated that there is no such
exception."); see also Sea Trade Co. Ltd. v. FleetBoston Fin.
Corp., 03 Civ. 10254 (JFK), 2004 WL 2029399 at *4-5 (S.D.N.Y.
2004) ("The partial performance exception to the statute of
frauds applies to those agreements governed by § 5-703 of the
General Obligations law . . . no such exception has been
recognized with respect to agreements governed by § 5-701.");
Nemelka v. Questor Mgmt. Co. LLC, 836 N.Y.S.2d 598, 599 (App.
Div. 2007) ("The exception to the statute of frauds for part
performance does not apply to General Obligations Law § 5-
701(a)(10).").

Ramko's final argument on this issue is that its
relationship with URRC was "so extensive" that the Statute of

Frauds' writing requirement can be overlooked. Def. Opp. 18-19.

In both of the cases upon which Ramko relies for this

proposition, the court found that section 5-701(a)(10) did not

apply because a finder of fact could determine that the

plaintiff was defendant's employee. See Seneca Ins. Co. v.

Morelli, 95 Civ. 10701 (JSM), 1996 WL 312230 at *2 (S.D.N.Y.

1996) (concluding that plaintiff had alleged facts from which a

factfinder could conclude that plaintiff "was an employee

rendering services, not a finder or negotiator"); Riley v.

N.F.S. Servs., Inc., 891 F. Supp. 972 (S.D.N.Y. 1995) (holding

that a jury could reasonably conclude that plaintiff was "hired

as a Senior Vice President, to head a new division of

[defendant] and that he had numerous responsibilities for which

he was paid a compensation package"); see also Streit v.

Bushnell, 424 F. Supp. 2d 633, 642 (S.D.N.Y. 2006) ("[T]he

complaint suggests that the parties had maintained an employment

relationship that began in 1995 under what in form and substance

may be properly deemed an employment contract that New York

courts have held are not subject to NYGOL § 5-705(a)(10).").

It is the nature of the alleged agreement, and not the

parties' relationship, that governs whether section 5-701(a)(10)

applies. See N.Y. Gen. Oblig. Law § 5-701(a)(10) (stating that

an agreement, promise or undertaking is void unless in writing

and subscribed to by the party to be charged therewith if it "is a contract to pay compensation for services rendered in negotiating . . . the purchase, sale, exchange, renting or leasing . . . of a business opportunity, business, its good will, inventory, fixtures or an interest therein . . . ."); see also Streit, 424 F. Supp. 2d at 641; Seneca, 1996 WL 312230, at *2; Riley, 891 F. Supp. at 974. Here, the alleged agreement to pay a break-up fee relates only to Ramko's allegation that it "negotiated a deal, consistent with URRC's stated criteria, with a firm called Founders, which was ready, willing and able to close on the deal." Answer ¶ 34. Ramko does allege that it "performed extensive services of various types for URRC with the expectation of being paid." Id. at ¶ 49. However, Ramko does not claim that the alleged agreement reflected in the December 2004 Revisions applies to that work, but rather seeks compensation for that work under separate claims. The language of the December 2004 revision of the Break-up Agreement applies only to the attempt to secure equity funding for URRC. See id., Ex. B at 2 ("This is to confirm our conversation wherein RamKo Venture Management ("RamKo") and its affiliate . . . have agreed, on a best efforts basis, to attempt to place an equity funding for URRC. Further, we have agreed that should RamKo be in the position to close such transactions, on substantially the terms outlined, and if, for any reason, the Company chooses to

20

accept alternative funding or a strategic investment, RamKo
shall be entitled to . . . a break-up fee . . . .").

The Statute of Fraud therefore bars Ramko's contract
claim for a break-up fee based on the December 2004 Unsigned
Revisions.

### 2. The Motion To Dismiss Is Denied as to Ramko's Contract Claim Seeking Compensation for Pre-2005 Services

Ramko also claims it is entitled to compensation for
"a broad array of financial consulting services, including
services of the type that would normally be performed by an in-
house CFO as well as those that would typically be within the
expertise of an outside investment banker." Answer ¶ 49.
According to Ramko, it is owed compensation for these services
dating from some time in 2001 through May 2005. Id. ¶ 51.
Ramko alleges that "Gutierrez promised Kohut repeatedly that
RamKo would be 'taken care of' when URRC raised financing.
Kohut, on behalf of RamKo, was willing to provide services based
upon Gutierrez's promises because he believed in URRC's
technology and was willing to take the risk that URRC would be
successful." Id. ¶ 49. The claim is premised on oral
representations by Gutierrez and the Past Work Agreement.

21

The Past Work Agreement, set forth in a letter dated

January 2, 2004, states that

> RamKo and the Company [URRC] have agreed that in
> consideration of past work on the Company's
> behalf, the Company shall issue to RamKo or its
> designee a 10 year warrant to purchase up to
> 4,000 shares (post private placement closing) of
> the Company's common stock exercisable, inclusive
> of a cashless exercise option, at $200.00 per
> share (based on the capital structure outlined in
> the Summary of Terms).

Id., Am. Ex. A at 4; see also id. ¶ 50. This agreement is

unenforceable because it fails to meet New York's statutory

requirements for an enforceable contract for past consideration.

"The general rule in New York is that past

consideration is not consideration, because the promise was not

induced by the consideration." Arnone v. Deutsche Bank, AG, 02

Civ. 4915 (MGC), 2003 WL 21088514, at *3 (S.D.N.Y. May 13,

2003). Past consideration, however, is valid in New York if

there is a writing signed by the party to be bound. N.Y. Gen.

Oblig. Law § 5-1105. For a party to recover pursuant to section

5-1105, "the writing must contain an unequivocal promise to pay

a sum certain, at a date certain, and must express consideration

for the promise." Umscheid v. Simnacher, 482 N.Y.S.2d 295,

297 (App. Div. 1984).

Here, the consideration was not "expressed" within the meaning of section 5-1105. In Umscheid, the Appellate Division held that "the consideration alluded to in the documents, viz., services rendered on the respondent's behalf, is vague, imprecise, and, indeed, without meaning. In short, resort to evidence extrinsic to the documents is necessary to give meaning to the consideration 'expressed' in those documents." Id. at 297-98. The alleged contract was therefore unenforceable. Id. Here, the consideration alluded to, "past work on the Company's behalf," is indistinguishable from the contract language addressed by Umscheid. The Past Work Agreement is therefore unenforceable. See also Arnone, 2003 WL 21088514, at *4 (holding that the relevant document did not sufficiently state the consideration provided by plaintiff).

However, Ramko's contract claim does not rely exclusively on the Past Work Agreement, but also on a prior oral agreement that was "reflected in the January 2004 Past Work Agreement." Def. Opp. 19. Ramko's breach of contract claim alleges that "RamKo was promised, orally and as reflected in the Past Work Agreement, compensation for the extensive pre-June 2005 services to URRC . . . ." Answer ¶ 57; see also id. ¶ 49 ("Gutierrez promised Kohut repeatedly that RamKo would be 'taken care of' when URRC raised financing."). URRC has failed to

23

demonstrate that Ramko's counterclaim for breach of this alleged oral contract should be dismissed.

As URRC points out, Ramko alleges that it was to be paid only in the event that URRC obtained capital investment. See id. ¶ 49 ("Gutierrez promised Kohut repeatedly that RamKo would be 'taken care of' when URRC raised financing."); id. ¶ 57 ("[I]t was always understood that those services were not being provided *gratis* and that RamKo would be paid the reasonable value of those services . . . when URRC's financial condition enabled it to make such payment."). The Answer also alleges that Ramko was willing to assume the risk of not being compensated for its work in the event that URRC failed to obtain financing: "Kohut, on behalf of RamKo, was willing to provide services based upon Gutierrez's promises because he believed in URRC's technology and was willing to take the risk that URRC would be successful." Id. Thus, as alleged by Ramko, URRC's obligation to compensate Ramko for its work from 2001 to May 2005 was subject to the condition precedent that URRC obtained capital funding. URRC argues that Ramko's counterclaim should be dismissed for failure to plead compliance with this condition precedent.

It is true that Ramko does not allege that URRC has
obtained the capital investment upon which Ramko's compensation
is conditioned. However, "under New York law, the failure of a
plaintiff to comply with conditions precedent is an affirmative
defense." Endovasc, Ltd. v. J.P. Turner & Co., LLC, 169 Fed.
App'x 655, 657 (2d Cir. 2006). Thus, Ramko is under no
obligation to affirmatively plead compliance with conditions
precedent. See N.Y. C.P.L.R. 3015(a) ("The performance or
occurrence of a condition precedent in a contract need not be
pleaded."); 1199 Hous. Corp. v. Int'l Fid. Ins. Co., 788
N.Y.S.2d 88, 89 (App. Div. 2005) ("[T]he burden to plead
'specifically and with particularity' that any condition
precedent has not been fulfilled rests on the party resisting
enforcement of the contract.").

URRC also argues that Ramko's contract claim based on
the alleged oral agreement is barred by the May 2005 Consulting
Agreement, under which URRC paid Ramko $8,500 monthly for two
years beginning in June 2005. See Complaint ¶ 11; Answer ¶ 12.
Section 14 of the Consulting Agreement states that the agreement
"constitutes the entire understanding between the parties with
respect to the subject matter hereof and supersedes all
negotiations, prior discussions, and preliminary agreements made
prior to the date hereof." Felner Decl. Ex. 5 at 5. URRC

25

argues that Ramko's claims for compensation for past work are superseded by the Consulting Agreement, relying on sections 14 and 8(b), which states that compensation for any services other than those defined in the agreement "shall be the subject of separate agreements mutually agreeable to the parties thereto." Id. at 4.

The Consulting Agreement does not define its "subject matter," and URRC's motion has not addressed the meaning of the term. However, paragraph one of the Consulting Agreement states that "[Ramko] agrees to provide the services of a skilled professional . . . commencing June 1, 2005 . . . such services to be substantially similar to those performed by a principal financial officer. . . . Unless otherwise agreed . . . Consultant shall perform the Services at an office of the Consultant . . . . The Company agrees that Consultant shall have ready access to the Company staff and resources as necessary . . . ." Id. at 1. This language may be reasonably interpreted to indicate that the contract's "subject matter" amounts to Ramko's services, as defined, to be provided commencing June 1, 2005. There is no indication that the Consulting Agreement was intended to address work performed by Ramko prior to that date.

26

The motion to dismiss Ramko's counterclaim for breach of contract as relates to consulting services rendered prior to June 1, 2005, is denied.

**B.   The Motion To Dismiss the Quantum Meruit, Unjust Enrichment and Promissory Estoppel Claims Is Granted as Relates to Services Provided in Connection with the Founders and DMS Transactions, and Otherwise Denied**

Ramko's second and third causes of action, for quantum meruit and unjust enrichment, each seek recovery for two distinct categories of services: (1) services Ramko allegedly provided in connection with the Founders transaction, and (2) alleged "services in respect of 'past work' performed pre-2005." See Answer ¶¶ 62-63, 66.  Ramko's fourth cause of action, for promissory estoppel, seeks compensation for those two categories of services and for investment banking services allegedly performed during 2005 related to URRC's acquisition of a company referred to in the Answer as "DMS."  See id. ¶¶ 53, 70.

To plead a claim for quantum meruit under New York law, a party must allege "(1) the performance of the services in good faith; (2) the acceptance of services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services."  LeBoeuf, Lamb,

Green & McRae, L.L.P. v. Worsham, 185 F.3d 61, 66 (2d Cir. 1999)
(quotations omitted). Courts may "analyze quantum meruit and
unjust enrichment together as a single quasi contract claim."
Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host
Corp., 418 F.3d 168, 175 (2d Cir. 2005); see also Seiden
Assocs., Inc. v. ANC Holdings, Inc., 768 F. Supp. 89, 96
(S.D.N.Y. 1991) ("[Q]uantum meruit and unjust enrichment are not
separate causes of action. Rather, unjust enrichment is a
required element for an implied-in-law, or quasi contract, and
quantum meruit, meaning 'as he deserves,' is one measure of
liability for the breach of such a contract." (citation
omitted)), rev'd on other grounds, 959 F.2d 425 (2d Cir. 1992).

        Ramko's counterclaims for quantum meruit and unjust
enrichment must be dismissed to the extent they seek
compensation in connection with the alleged Founders
transaction. New York General Obligations Law § 5-701(a)(10)
extends "to a contract implied in fact or in law." See
Minichiello v. Royal Bus. Funds Corp., 223 N.E.2d 793 (N.Y.
1966) (holding that the 1964 amendment to section 5-701(a)(10)
clearly precludes any recovery in quantum meruit); see also
Prescient Acquisition Group, Inc. v. MJ Publ'g Trust, 05 Civ.
6298 (PKC), 2006 WL 2136293, at *5 (S.D.N.Y. 2006) ("In New
York, a plaintiff may not assert an action under a theory of

28

unjust enrichment in order to circumvent the writing requirement of the Statute of Frauds."); Zeising v. Kelly, 152 F. Supp. 2d 335 (S.D.N.Y. 2001) ("In a breach of contract case, '[t]he requirement of a writing cannot be circumvented by an action for compensation in *quantum meruit*.'" (quoting Orderline Wholesale Distribs., Inc. v. Gibbons, Green, van Amerongen, Ltd., 675 F. Supp. 122, 128 (S.D.N.Y. 1987))).

Ramko's promissory estoppel claim is likewise subject to the Statute of Frauds. "To invoke the power that equity possesses to trump the Statute of Frauds, plaintiff must demonstrate 'unconscionable' injury, *i.e.,* injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement." Merex, 29 F.3d at 826 ; see also Sugerman 158 F. Supp. 2d at 325 ("Under New York law, the use of promissory estoppel to overcome the State of Frauds has been strictly limited to those rare cases when the circumstances render the denial of recovery 'unconscionable.'" (quotation omitted)). The "break-up fee" sought by Ramko is no more than the expectation damages which flow naturally from the non-performance of the alleged agreement. Cf. Philo Smith & Co., Inc. v. USLIFE Corp., 554 F.2d 34, (2d Cir. 1977) (affirming dismissal of complaint where plaintiffs' only substantial injury was loss of finder's fee); Weissman v. Seiyu,

Ltd., 98 Civ. 6978 (HB), 2000 WL 42205 at *10 (S.D.N.Y. 2000)
("[P]laintiff's loss of his commission and purported damage to
his reputation . . . are not enough to rise to the level of
unconscionability."); Ellis v. Provident Life & Accident Ins.
Co., 3 F. Supp. 2d 399, 410 (S.D.N.Y. 1998) (holding that
payments allegedly due former employee on commissions from
renewal of insurer's policies did not constitute
"unconscionable" injury). To the extent that it seeks recovery
of services provided by Ramko in connection with the Founders'
transaction, the promissory estoppel claim is therefore
dismissed.

Ramko also asserts its quasi-contract claims in the
alternative to its contract claim seeking compensation for pre-
2005 services "reflected" in the Past Work Agreement. See
Answer ¶¶ 51, 61, 63, 66.

URRC argues that the existence of the Past Work
Agreement precludes Ramko's quasi-contract claims, citing R.B.
Ventures, Ltd. v. Shane for the proposition that "[claims for
unjust enrichment or quantum meruit] are non-contractual,
equitable remedies that are inapplicable if there is an
enforceable contract governing the subject matter." 112 F.3d
54, 60 (2d Cir. 1997). See Pl. Mem. at 18. As discussed above,

30

the Past Work Agreement is not an enforceable contract, and R.B.
Ventures is therefore inapposite.  The motion to dismiss Ramko's
quasi-contract claims is denied with respect to the pre-2005
services reflected in the Past Work Agreement.

In addition to compensation for the services reflected
in the Past Work Agreement, Ramko's promissory estoppel claim
also seeks compensation for "investment banking services"
provided to URRC "in connection with URRC's acquisition of a
silver recycling business called DMS."  Answer ¶ 53.  According
to Ramko, Gutierrez promised "that this assignment would
generate a fee for RamKo consistent with normal investment
banking fees if it were consummated," and that Ramko provided
such services "in reasonable expectation of receiving ordinary
and customary compensation for the value of its services . . .
."  Id.  This claim falls squarely within N.Y. Gen. Oblig. Law §
5-701(a)(10), and must therefore be dismissed.  Ramko argues
that the Consulting Agreement carves out "investment banking
services performed by [Ramko]," and therefore expresses URRC's
recognition that such services were being provided.  Def. Opp.
22.  Even if this were the case, Ramko has pointed to no signed
document that evidences the terms of the contract, see
Ladenberg, 712 N.Y.S.2d at 529; supra at IV.A.1; nor has Ramko
alleged "unconscionable injury."  See supra at IV.B.

31

**D.   Ramko's Fraud Claim Is Dismissed**

Ramko's fraud claim alleges that URRC and Gutierrez
promised to pay Ramko a fee for its services related to a
potential deal with Founders and a break-up fee if a deal went
forward with NTR, but that Gutierrez, at the time of the
purported agreements, never actually intended to pay Ramko.
Answer ¶¶ 73-78.  Although there is some uncertainty on the
proper interpretation of New York law on the question, see Sofi
Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 244-45
(S.D.N.Y. 2006), the Court of Appeals for the Second Circuit has
repeatedly held that New York law does not permit an action for
fraud where the plaintiff alleges only that defendant entered
into a contract with no intention of performing.  See
Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98
F.3d 13, 19-20 (2d Cir. 1996) ("[I]ntentionally false statements
by [defendant] indicating his intent to perform under the
contract . . . . [are] not sufficient to support a claim for
fraud under New York law."); Grappo v. Alitalia Linee Aeree
Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995) ("A cause of
action does not generally lie where the plaintiff alleges only
that the defendant entered into a contract with no intention of
performing."); see also TVT Records v. Island Def Jam Music
Group, 412 F.3d 82, 90 (2d Cir. 2005) ("[U]nder New York law,

the failure to disclose an intention to breach is not actionable as fraudulent concealment."). "To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone, 98 F.3d at 20 (citations omitted). Ramko's fraud claim meets none of these requirements, and is therefore dismissed.

**Conclusion**

The motion of URRC is granted as to Ramko's counterclaims seeking a fee related to the Founders and DMS deals, including the fraud claim, which are dismissed. The motion is denied as to Ramko's contract and equitable claims seeking compensation for the services "reflected" in the Past Work Agreement. Leave to replead within 20 days is granted.

It is so ordered.

**New York, N.Y.**
**October  24 , 2008**

**ROBERT W. SWEET**
**U.S.D.J.**

33