UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED RESOURCE RECOVERY
CORPORATION,

                Plaintiff,              07 Civ. 9452

   -against-                        <u>OPINION</u>

RAMKO VENTURE MANAGEMENT, INC.
and JOHN KOHUT,

                Defendants.

------------------------------------X

RAMKO VENTURE MANAGEMENT, INC.,

      Third-Party Plaintiff,

   -against-

CARLOS GUTIERREZ,

      Third-Party Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff
        United Resource Recovery Corporation
        <u>and Third-Party Defendant Carlos Gutierrez</u>

        PORZIO, BROMBERG & NEWMAN, P.C.
        156 West 56th Street, Suite 803
        New York, NY 10019-3800
        By:  Gary M. Fellner, Esq.


        Attorney for Defendants
        Ramko Venture Management, Inc. and
        <u>John Kohut</u>

        LLOYD S. CLAREMAN
        121 East 61st Street
        New York, NY 10065

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/28/09

**Sweet, D.J.**

Plaintiff United Resource Recovery Corporation ("URRC" or the "Plaintiff") and third-party defendant Carlos Gutierrez ("Gutierrez") have moved under Rule 56, Fed. R. Civ. P., to dismiss the counterclaims of defendants Ramko Venture Management, Inc. ("Ramko") and John Kohut ("Kohut") (collectively, the "Defendants") and the third-party complaint of Ramko against Gutierrez.  Upon the facts and conclusions set forth below, the URRC motion is granted and the counterclaims and third-party complaint are dismissed.

The resolution of this motion seeking to resolve the dispute between a start-up company, URRC, and Kohut, the sole shareholder and officer of Ramko, over the compensation for services provided by Kohut, turns on whether or not a factual issue is presented with respect to the existence of an understanding between the parties over their six-year relationship to pay Kohut for certain services allegedly provided.  While the question is indeed close, the facts as viewed by Defendants do not present a conflict requiring a trial and fail to establish the understanding asserted by Kohut.

1

## I.    PRIOR PROCEEDINGS

On February 20, 2007, URRC filed a declaratory
judgment action against Ramko and Kohut, its president, in
the United States District Court for the District of South
Carolina seeking a declaration that Ramko is not entitled
to any fees as demanded in connection with any actual or
alleged agreement.

On April 4, 2007, Ramko filed an "Answer and
Counterclaim and Third-Party Complaint" against URRC's
principal, Gutierrez, asserting counterclaims for breach of
contract, unjust enrichment, quantum meruit, promissory
estoppel, and fraud against URRC and a third-party claim
against Gutierrez for promissory estoppel and fraud.   Upon
motion by Ramko, the District Court of South Carolina
transferred the action to the Southern District of New York
in October 2007.

In January 2008, URRC moved to dismiss Ramko's
counterclaims and third-party claims pursuant to Fed. R.
Civ. P. 12(c).  The Court's opinion granting URRC's motion
in part categorized Ramko's counterclaims as seeking

2

payment for: (1) a break-up fee on the "Founders" deal; (2)
work "reflected" in the Past Work Agreement performed from
2001 to May 2005; and (3) investment banking services
rendered in 2005.  United Res. Recovery Corp. v. Ramko
Venture Mgmt., 584 F. Supp. 2d 645, 652 (S.D.N.Y. 2008)
(the "October 28 Opinion").  The counterclaims related to
the first and third categories were dismissed.

In denying the motion to dismiss Ramko's claims
related to "CFO-type" services allegedly provided from 2001
to May 2005, the Court held that, at the pleading stage,
Ramko sufficiently stated a claim for breach of an oral
contract based upon Ramko's allegations that:

- From 2001 through May 2005, Ramko provided URRC
  with "a broad array of financial consulting
  services, including services of the type that
  would normally be performed by an in-house CFO."
  Id. at 655 (citing Answer ¶ 49, 51);

- "Gutierrez promised Kohut repeatedly that Ramko
  would be 'taken care of.'"  Id.; and

- "Ramko was promised, orally and as reflected in
  the Past Work Agreement [dated January 2, 2004],
  compensation for the extensive pre-June 2005
  services to URRC . . . ."  Id. at 656 (citing
  Answer ¶ 49, 57).

3

Discovery ended March 30, 2009.  The instant motion was heard and marked fully submitted on April 29, 2009.

## II.  THE FACTS

The facts are set forth in the Plaintiff's and Third-Party Defendant's Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1, and the Defendants' Response and Statement of Material Disputed Facts, pursuant to Local Civil Rule 56.1.  The facts are undisputed except as noted.

URRC is a South Carolina corporation and Gutierrez is its CEO.  URRC was formed in 1992 and is involved in the plastic recycling and silver reclamation business and has a patented recycling technology capable of extracting a plastic raw material called "PET" from certain waste products and creating a "super cleaned" FDA approved form of recycled PET.

Ramko, by its sole shareholder and officer, John Kohut, is engaged in the business of providing financial services in New York to help clients raise venture capital.

4

According to Defendants, Ramko and Kohut at all relevant
times also provided strategic guidance and services of a
consulting and financial nature.

URRC retained Ramko to help URRC raise private
capital to expand its plastic recycling business.
Defendants assert that URRC also sought financial and
strategic guidance from Ramko, and that Kohut became
integrally involved in all aspects of URRC's business apart
from the technical side.

The parties signed the first of several
successive, written contingent fee agreements, all prepared
by Ramko, in March 2001.  The March 2001 agreement provided
that Ramko would use "best efforts" to secure a $1.2
million bridge loan for URRC in exchange for a contingent
fee of 10% of the loan amount, plus out-of-pocket expenses
and stock warrants.  See Ex. 1 to the Decl. of Carlos
Gutierrez in Supp. of Mot. for Summ. J. Pursuant to Fed. R.
Civ. P. 56 ("Gutierrez Decl.").  The parties also signed a
private placement agreement in April 2001 under which Ramko
agreed to try to raise $3 to $6 million of equity capital
for URRC in exchange for a contingent fee of 10% of the

5

capital raised, out-of-pocket expenses, and stock warrants. Ramko failed to raise any capital under these agreements.

In August 2001, Ramko and URRC entered into a revised, private placement agreement under which Ramko agreed to use "best efforts" to raise $2 million in equity capital for URRC. Gutierrez Decl. Ex. 4. As previously provided, Ramko would receive 10% of the capital raised, plus expenses and warrants, if and when Ramko succeeded in raising capital. Ramko failed to raise any capital under this agreement.

The parties signed additional private placement agreements in March 2002 and November 2002 that superseded the prior agreements. Under the 2002 agreements, Ramko attempted to raise $2 million and $6 million for URRC, respectively, for a percentage based contingent fee and warrants. Ramko failed to raise any capital under these agreements.

The parties signed another written agreement in January 2004. Pursuant to that agreement, Ramko undertook to raise $16 million in equity capital, in two tranches of $8 million each, for URRC in exchange for the same

6

percentage based contingent fee and warrants as in past agreements.  URRC also agreed pursuant to a separate "side letter" dated January 2, 2004, to pay Ramko additional warrants for "past work" conditioned upon the private placement closing.  Gutierrez Decl. Ex. 8.  Ramko did not raise any capital under the January 2004 agreement.

In addition to the terms referenced above, all of the agreements signed from 2001 to 2004, except the March 2001 agreement, stated that if and when Ramko raised the capital, URRC and an affiliate of Ramko would enter into a financial advisory agreement for prospective consulting services at the rate of $8,500 per month.  Ramko also attached a sample form financial advisory agreement to the March 2002, November 2002, and January 2004 agreements which Defendants assert Ramko expected to be used as a template for a post-closing financial advisory agreement for future consulting services, if and when Ramko raised the capital.  The sample agreement provided that for a monthly fee Ramko would perform services "similar to those performed by the principal financial officer."  Gutierrez Decl. Exhs. 5-8.

Although Ramko did not raise the capital URRC sought under any of the written contingent fee agreements from March 2001 to May 2004, Ramko did arrange for an investment by Founders Equity SBIC, LLP ("Founders") which URRC elected not to accept.

In connection with its efforts to promote URRC and raise capital, Ramko, by Kohut, became knowledgeable about URRC's business, its ongoing financial condition and future business prospects.  Ramko agreed to earn a fee only if it raised capital under the contingent fee agreements based on Kohut's belief in URRC's recycling technology and his expectation that Ramko would be able to raise the necessary capital.  In addition, Defendants assert that Kohut was repeatedly assured that Ramko would be taken care of with respect to its pre-June 2005 work beyond capital-raising whenever, and however, URRC raised money.  Subsequent to the termination of the parties' business relationship, URRC entered into an agreement with Coca-Cola for the construction of a recycling facility.

In May 2005, URRC and Ramko entered into a flat-fee consulting agreement that Kohut had prepared ("May 2005 Agreement").  The terms of the May 2005 Agreement were

8

largely extracted from the form financial advisory
agreement that Ramko had repeatedly attached and sent with
the prior fee agreements.  Like that form agreement, the
May 2005 Agreement stated that Ramko would provide
prospective services "similar to those performed by a
principal financial officer" for a prospective monthly fee
(i.e., $8,500).  Gutierrez Decl. Ex. 10.  The May 2005
Agreement did not provide for any retroactive payments for
past work.

From June 2005 to May 2007, URRC paid Ramko, on a
monthly basis, a total of approximately $204,000 in
financial advisory fees.  The services that Ramko performed
prior to June 2005 were substantially similar to those it
performed after June 1, 2005.  URRC terminated the May 2005
Agreement with Ramko in 2007.

Defendants have asserted in their remaining
counterclaims that they should be paid for pre-June 2005
"CFO-type" services Ramko allegedly provided to URRC,
including consulting on virtually all aspects of URRC's
business.  According to Kohut, Gutierrez indicated that he
would pay Ramko the substantial equivalent of, or
conceivably more than, the $8,500 per month that had been

9

discussed as Ramko's fee for its various pre-June 2005 services, but which URRC did not have the then-current financial ability to pay.

According to Defendants, Kohut's expectation of compensation was explicitly or implicitly present in all of the discussions involving Gutierrez's repeated assurances to Kohut that he would be "taken care of."  See, e.g., Defs.' Mem. of P. & A. in Opp'n. ("Opp. Mem.") at 9.

Although Ramko never issued URRC a bill for any alleged "CFO-type" services, Ramko frequently did business on a handshake.

In an email of May 21, 2005, Gutierrez wrote Kohut stating "If you are still with me . . . let do it . . . . but to be fair . . . we may have to do it differently . . . . my conscious is hurting me . . ."  Ex. E to Affirm. of Lloyd S. Clareman in Opp'n to Pl.'s & Third-Party Def.'s Mot. for Summ. J.

**III. DISCUSSION**

### A.    The Summary Judgment Standard

Summary judgment is granted only where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004).  The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law."  Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18

11

(2d Cir. 2002).  However, "the non-moving party may not
rely simply on conclusory allegations or speculation to
avoid summary judgment, but instead must offer evidence to
show that its version of the events is not wholly
fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir.
1999) (internal quotes omitted).  Summary judgment is
appropriate where the moving party has shown that "little
or no evidence may be found in support of the nonmoving
party's case.  When no rational jury could find in favor of
the nonmoving party because the evidence to support its
case is so slight, there is no genuine issue of material
fact and a grant of summary judgment is proper." Gallo v.
Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24
(2d Cir. 1994) (citations omitted).

        The following facts are claimed by the Defendants
to have been established during discovery:

- Gutierrez repeatedly promised Kohut that Ramko
  would be "taken care of" with respect to
  payment for its pre-June 2005 services.

- Ramko expected to be paid for these services.

- The valuation of Ramko's services at $8,500 per
  month throughout the period prior to June 1,
  2005, was reasonable.

12

- The services Ramko performed prior to June 2005
  were substantially similar to those it
  performed after June 1, 2005.

- Ramko provided "ongoing strategic direction and
  oversight" to URRC.

- Ramko acted as URRC's "regularly employed"
  "financial services" professional and was
  essentially on call and available to URRC
  during the period prior to June 2005.

- Gutierrez's "conscience was hurting [him]" in
  May 2005.

- Ramko's services were as valuable as Gutierrez
  suggested they were when he proposed making
  Kohut the swing vote on URRC's Board of
  Directors, and wrote approvingly to Founders of
  the "dedication" Kohut had shown to URRC as
  well as of the knowledge of the company and the
  marketplace that Kohut had displayed over the
  years.

Opp. Mem. at 14-15.

Accepting these facts as undisputed for summary
judgment purposes, the question is presented whether or not
as a matter of law an enforceable counterclaim and third-
party complaint has been stated.

**B.     The Verbal Contract Claim is Dismissed**

13

To form a contract there must be an objective meeting of the minds and a manifestation of mutual assent "'sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'" Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007) (quoting Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d 584, 589 (1999)); Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495, 506 (S.D.N.Y. 2001) ("If an agreement is not reasonably certain in its materials terms, there can be no legally enforceable contract."). "[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." Tractebel Energy Mktg., 487 F.3d at 95. Price and compensation are examples of material terms that require definiteness. Major League Baseball Props., Inc. v. Opening Day Prods., Inc., 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005). In addition, a party's subjective belief as to what was agreed to or intended is not controlling. Rosoff v. Mountain Laurel Ctr. for the Performing Arts, 317 F. Supp. 2d 493, 499 (S.D.N.Y. 2004) (finding "statements of belief or understanding are immaterial in view of the well established principle that the controlling intention is that which is discerned from

14

the parties' objective manifestation of agreement, not
subjective, uncommunicated intentions or beliefs").

Defendants' claim for breach of contract is based
on the alleged existence of an oral contract in which URRC
agreed to pay Ramko $8,500 per month for pre-June 2005
"CFO-type" services.  Defendants' assertion that such an
oral contract exists relies heavily on Gutierrez's
statements between 2001 and June 2005 that Ramko would be
"taken care of."  Opp. Mem. at 9, 17.  Defendants also
assert that Gutierrez "indicated" to Kohut at some point
that "he would pay Ramko the substantial equivalent, or
conceivably more, than the amount of $8,5000 per month" for
ongoing "CFO-type" services.  Defendants' Response to
Plaintiff's and Third-Party Defendant's Statement of
Undisputed Material Facts, and Statement of Material
disputed Facts, Pursuant to Local Civil Rule 56.1, ¶ 20.

Defendants' assertion that Gutierrez specified
the amount of compensation to be paid Ramko for the pre-
June 2005 "CFO-type" services is belied by Kohut's
deposition testimony, including the portions cited by
Defendants.  During his deposition, Kohut repeatedly
testified that Gutierrez's assurances that Kohut would be

15

compensated for "CFO-type" services were "undefined" and

that Gutierrez never specified the form or amount of

compensation:

> Q.   Did Mr. Gutierrez ever say to you that he
> will take care of you for the sum of $8,500 per
> month?
>
> A.   No.

Kohut Tr. 62:9-13.


> A.   . . . I was told I would be taken care of.
> Quite frankly, I expected to be taken care of for
> more than $8,500.
>
> * * *
>
> Q.   But Mr. Gutierrez never said to you that
> you'll be paid a specific sum correct?
>
> A.   We never talked a sum.  Like I said, my
> expectation was higher than $8,500.

Kohut Tr. 62:18-20; 63:20-23.


> A.   . . . . And to be honest with you, the
> translation of "I would be taken care of,"
> probably could have been in stock, could have
> been in warrants, could have been ownership of
> the company, cash, whatever.

Kohut Tr. 61:8-13.


> A.   . . . Multiple times a day, he [Gutierrez]
> would say that he would take care of me.  It was
> undefined from that standpoint - it might be

16

> equity he chose to give - they gave Gerry equity.
> To the extent that I recognized that he
> appreciated the expertise I brought to the
> company . . . but I had no reason to doubt he was
> good for it, and if he had said, hey, it would be
> x percent of the company and if I thought that
> wasn't fair compensation for financing with him
> for six years, I would have felt very comfortable
> to say, that really isn't fair compensation for
> everything I have done.

Kohut Tr. 185:24-186:18.


Taken alone, Gutierrez's vague and ambiguous statement that Kohut would be "taken care of" is too indefinite to form a legally enforceable contract. Major League Baseball Props., 385 F. Supp. 2d at 271-72 (finding statement "we'll compensate you" too indefinite to establish a meeting of the minds between the parties); Harkavy v. Apparel Indus., Inc., No. 73 Civ. 4764 (DBD), 1974 WL 395, at *3, (S.D.N.Y. Apr. 25, 1974) (finding defendant's statements to plaintiff that "[y]ou won't be forgotten about a stock option" and "I will take care of you when all plans are finished" were too indefinite to create an enforceable contract); Glanzer v. Keilin & Bloom LLC, 722 N.Y.S.2d 540, 541 (App. Div. 2001) (finding promise to pay plaintiff "substantial income," "market rate," and "equity interest" was too indefinite to support claim for breach of contract). As this court has

17

previously held, "[o]ral assurances . . . cannot of themselves give rise to a triable question of fact as to the existence of a contractual relationship." Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd., No. 06 Civ. 5474 (JGK), 2008 WL 857492, at *15 (S.D.N.Y. Mar. 31, 2008) (quoting Albert v. Loksen, 239 F.3d 256, 264 (2d Cir. 2001)).

Ramko has also argued that URRC's oral promise is corroborated by written evidence. In support of this contention, Ramko cites the April 20, 2001 contingent fee agreement as evidence that the parties had an oral contract contemplating that Ramko and Kohut would be compensated for "CFO-type" services at $8500/month for the period prior to June 2005. The cited April 2001 agreement's terms state, in relevant part, that:

> [T]o the extent the Company accepts Private
> Placement Funds arranged by Ramko . . . as
> compensation for its active participation in the
> on-going strategic direction and oversight of the
> Company's activities, the Company shall enter
> into a financial advisory agreement with an
> affiliate of Ramko for a term of five years or as
> long as a representative of Ramko remains on the
> Company's Board of Directors.  The terms of this
> agreement shall include a monthly advisory fee of
> $8,500 plus reasonable out of pocket expense.

18

Gutierrez Decl. Ex. 2.  Ramko has contended that this
clause proves that when the parties signed the April 2001
fee agreement, they contemplated that URRC would pay Ramko
$8,5000 per month for CFO-type services, retroactively,
after URRC raised money, with or without Ramko's
assistance.  However, the April 2001 contract indicates
only that the parties expected to enter into a financial
advisory agreement for prospective fees at the rate of
$8,500 per month if and when Ramko arranged financing.  The
contract therefore fails to corroborate Defendants'
contention that there existed an oral contract specifying
payment terms for "CFO-type" services during the period
prior to June 2005.  Similarly, the language of the
parties' numerous contingent fee agreements contradicts
Kohut's position (i.e., the fee provision in all of the
contracts stated that the parties would sign a financial
advisory agreement for a flat fee only after Ramko raised
the private capital URRC sought).

        Defendants also rely upon Kohut's deposition
statement that he became "involved in everything" as an
indication that there existed an oral contract between the
parties.  See, e.g., Opp. Mem. at 2, 6.  That Kohut chose
to learn about URRC's business does not establish that URRC

19

ever agreed to pay him any fees or compensation beyond what was agreed to in writing, or that URRC ever did anything that manifested an intent to pay URRC anything beyond what was contained in the contingent fee agreements.

Similarly, Ramko has cited excerpts from URRC's Business Plans from 2002 to 2005, which identify Ramko as a provider of "financial services"; one email from Gerry Fishbeck (URRC's Vice President) to a business prospect characterizing Kohut's role with URRC as "Board Member/Financial"; and one email dated May 21, 2005 from Gutierrez to Kohut stating "[i]f you are still with me . . . let do it . . . but to be fair . . . we may have to do it differently . . . my conscious is hurting me . . ."  See, e.g., id. at 4, 5, 11.  These statements, however, also do not establish that URRC agreed to separately pay Ramko anything beyond the parties' written fee agreements.  Ramko has produced no evidence that the parties orally agreed to any compensation for "past work" beyond what was contained in the written Past Work Agreement signed in May 2005.

Furthermore, Kohut testified during his deposition that he never shared with Gutierrez his belief or expectation that Ramko would be paid for pre-May 2005

20

"CFO-type" services separate and apart from its fee for
capital raising efforts.  Gutierrez Decl. Ex. 16, at 172:19
to 174:2.  In addition, Kohut testified that he could not
recall ever having shared with Gutierrez the distinction
that he now seeks to draw between his "capital-raising"
activities and his "CFO-type" activities.  Id.  Rather,
Kohut testified only to his subjective belief that he would
be paid for the activities he viewed as distinct from his
"capital-raising" obligations.

On the facts presented, no basis exists for a
reasonable finder of fact to conclude that a meeting of the
minds occurred such that an enforceable contract sprung
into existence with respect to compensation for Ramko's
pre-June 2005 "CFO-type" activities.

### C.   The Quasi Contract Claims Are Dismissed

Ramko has alleged the quasi contract theories of
quantum meruit and unjust enrichment to recover
compensation from URRC for alleged pre-May 2005 "CFO-type"
services.  To recover in quantum meruit, a party must
establish "(1) the performance of the services in good
faith, (2) the acceptance of the services by the person to

21

whom they are rendered, (3) an expectation of compensation
therefore, and (4) the reasonable value of the services."
LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d
61, 66 (2d Cir. 1999) (quoting Martin H. Bauman Assocs.,
Inc. v. H&M Int'l Transp., Inc., 567 N.Y.S.2d 404, 408
(App. Div. 1991)).  As this Court has previously held,
courts may "analyze quantum meruit and unjust enrichment
together as a single quasi contract claim."  United Res.
Recovery Corp., 584 F. Supp. 2d at 658 (quoting Mid-Hudson
Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,
418 F.3d 168, 175 (2d Cir. 2005)).


        The facts asserted by Ramko fail to establish
that it had a reasonable expectation to be compensated for
its alleged pre-May 2005 "CFO-type" services.  See GMD
Shipyard Corp. v. Dermaga Shipping, No. 03 Civ. 2748 (RWS),
2004 WL 2251670, at *7 (S.D.N.Y. Oct. 6, 2004) (dismissing
quantum meruit claim for lack of a "reasonable expectation
of compensation").


        The parties' six-year business relationship was
defined by a series of written contingent and non-
contingent fee agreements that set forth in detail the
relationship between URRC and Ramko.  Significantly, issues

22

of compensation were always addressed with specificity in
those agreements.  For instance, from 2001 to January 2004,
all of the parties' contingent fee agreements specified
that Ramko would be paid a particular percentage amount of
the capital to be raised, a specific sum to cover Ramko's
expenses, and a specific number of warrants.  The January
2004 Past Work Agreement was similarly specific down to the
number of stock warrants that Ramko would receive if it
raised private capital.  The May 2005 Agreement, which set
forth compensation for "CFO-type" services even in the
absence of capital funding, also specified a monthly
advisory fee.  Even the sample financial advisory agreement
for prospective "CFO-type" services that Ramko attached to
the March 2002 to January 2004 contingent fee agreements
and hoped the parties would sign post-closing contained
explicit compensation clauses.

        Moreover, as Kohut's deposition testimony makes
clear, Ramko never shared with URRC its belief that it
would be paid separately for pre-closing "CFO-type"
services.  See, e.g., Muller Boat Works, Inc. v. Unnamed
52' House Barge, 464 F. Supp. 2d 127, 142 (E.D.N.Y. 2006)
(noting plaintiff evidenced his expectation to be
compensated by providing an estimate for his work and

23

issuing an invoice).  New York courts have held that

quantum meruit claims fail where a party cannot reasonably

know that services are being performed by the other party

with the expectation that additional payment will be made

for those services.  In Freedman v. Pearlman, 706 N.Y.S.2d

405 (App. Div. 2000), the plaintiff claimed that he

performed numerous financial services for the defendant and

accepted below market value compensation because the

defendant made oral representations that the plaintiff

would be "fairly compensated."  Id. at 406-07.  Plaintiff

sought to recover in quantum meruit.  The First Department

upheld the dismissal of plaintiff's claim, ruling that:

> [Plaintiff's] allegation that he performed
> services far greater than defendants deserved for
> the compensation he actually received are not
> sufficient to state a cause of action in quantum
> meruit where none of the services allegedly
> performed are "so distinct from the duties of his
> employment and of such nature that it would be
> unreasonable for the employer to assume that they
> were rendered without expectation of further
> pay."

Id. at 408 (quoting Robinson v. Munn, 238 N.Y. 40, 43

(1924)); see also Cannon v. First Nat'l Bank of East Islip,

469 N.Y.S.2d 101, 103 (App. Div. 1983) ("Where a person

renders services over a long period of time at a fixed rate

24

and is regularly paid, the presumption is that the amount
paid was inclusive of all services . . . ." (citations
omitted)).

Based on Kohut's testimony, it is clear that he
fully expected to raise the private capital, earn a
sizeable fee, and continue on with URRC in a long term
capacity.  However, Ramko cannot now recover compensation
that it never contracted for because Kohut's plans with
URRC did not work out as he hoped.  See, e.g., Landcom,
Inc. v. Galen-Lyons Joint Landfill Comm'n, 687 N.Y.S.2d 841
(App. Div. 1999).  In Landcom, the court found that Landcom
had prepared a landfill construction application and
incurred expenses with the expectation that it would
eventually operate a new landfill facility.  Id. at 842-43.
When the facility failed to materialize, Landcom sought
damages from the defendant under the theory of quantum
meruit.  In dismissing Landcom's claim on summary judgment,
the court found no expectation to compensation, stating
that "[a]lthough it may seem harsh to deny Landcom payment
for services rendered at the request of the municipal
officials, Landcom . . . undertook the work at its own
risk."  Id. at 843 (quoting Gill, Korff & Assoc. v. County
of Onondaga, 544 N.Y.S.2d 393, 395 (App. Div. 1989)).

Given the parties' consistent practice of
detailing their business relationship in writing, URRC's
justified expectation that any "CFO-type" services provided
by Ramko were part of the parties' contingent fee
agreement, and Ramko's admitted failure to communicate its
contrary expectation to URRC, Ramko's expectation that it
would be compensated for its "CFO-type" services cannot be
viewed as reasonable.

### D.   **The Promissory Estoppel Claims Are Dismissed**

To establish promissory estoppel, a party must
show "a clear and unambiguous promise; a reasonable and
foreseeable reliance by the party to whom the promise is
made; and an injury sustained by the party asserting the
estoppel by reason of his reliance." Reprosystem, B.V. v.
SCM Corp., 727 F.2d 257, 264 (2d Cir. 1984) (citation
omitted).  Gutierrez's statement that Ramko would be "taken
care of" was far from a "clear and unambiguous" promise
necessary to sustain Defendants' promissory estoppel claim.
See, e.g., Brinsights, LLC v. Charming Shoppes of Delaware,
Inc., No. 06 Civ. 1745 (CM), 2008 WL 216969, at *5
(S.D.N.Y. Jan. 16, 2008) (finding that even in conjunction

26

with other statements, assurance that "the contract will be taken care of," did not constitute clear and unambiguous promise); Jaffe v. Aetna Cas. & Sur. Co., No. 93 Civ. 0385 (SAS), 1996 WL 337268, at *3 (S.D.N.Y. June 19, 1996) (finding employer's generalized statements, including that employee would be "well taken care of" if he did his job constituted only "vague assurances").

## IV.   CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted and the remaining counterclaims and third-party claims against URRC and Gutierrez are dismissed.

It is so ordered.

New York, NY
August 2 5, 2009

ROBERT W. SWEET
U.S.D.J.

27